### UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| **RODERICK GILMORE,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| v. | ) | **Civil Action No. 05-10127-PBS** |
| | ) | |
| **LUIS SPENCER,** | ) | |
| | ) | |
| **Respondent.** | ) | |
| | ) | |

### RESPONDENT'S APPENDIX ACCOMPANYING HIS MOTION TO DISMISS

Pursuant to this Court's Order of January 25, 2005, Respondent Luis Spencer,

Superintendent of the Massachusetts Correctional Institute at Norfolk (the "Respondent"),

hereby files this Appendix containing documents relevant to the issue of whether Petitioner

Roderick Gilmore (the "Petitioner") previously exhausted available state remedies with respect

to the matters raised by his Habeas Corpus Petition (the "Petition"). The offering of such

documents should not be construed as implying that the Respondent considers the Petitioner to

have fully exhausted state remedies. In fact, the Respondent takes a position to the contrary, as

noted in his accompanying Motion to Dismiss and Memorandum of Law in Support of His

Motion to Dismiss.

Specifically, attached hereto as exhibits are true and accurate copies of the following:

EXHIBIT A.        Docket for Commonwealth v. Roderick Gilmore, Case No. PLCR1994-

95245 in the Plymouth County, Massachusetts, Superior Court ("Super.

Ct. Docket");

EXHIBIT B.      Docket for <u>Commonwealth v. Roderick Gilmore</u>, Case No. 1996-P-1435 in the Massachusetts Appeals Court ("App. Ct. Docket No. 1996-P-1435");

EXHIBIT C.      Docket for <u>Commonwealth v. Roderick Gilmore</u>, Case No. 1998-P-0497 in the Massachusetts Appeals Court ("App. Ct. Docket No. 1998-P-0497");

EXHIBIT D.      Docket for <u>Commonwealth v. Roderick Gilmore</u>, Case No. FAR-11236 in the Supreme Judicial Court for the Commonwealth of Massachusetts ("SJC Docket No. FAR-11236");

EXHIBIT E.      Docket for <u>Commonwealth v. Roderick Gilmore</u>, Case No. 2001-P-1489 in the Massachusetts Appeals Court ("App. Ct. Docket No. 2001-P-1489");

EXHIBIT F.      Docket for <u>Commonwealth v. Roderick Gilmore</u>, Case No. FAR-13911 in the Supreme Judicial Court for the Commonwealth of Massachusetts ("SJC Docket No. FAR-13911");

EXHIBIT G.      <u>Commonwealth v. Gilmore</u>, 48 Mass. App. Ct. 1121, 724 N.E.2d 752 (2000) (table decision), the decision of the Massachusetts Appeals Court in connection with Case No. 1996-P-1435;

EXHIBIT H.      <u>Commonwealth v. Gilmore</u>, 432 Mass. 1101, 733 N.E.2d 1065 (2000) (table decision), the decision of the Supreme Judicial Court for the Commonwealth of Massachusetts in connection with Case No. FAR-11236;

EXHIBIT I.    <u>Commonwealth v. Gilmore</u>, 59 Mass. App. Ct. 231, 331, 794 N.E.2d 1284, 1285 (2003), the opinion of the Massachusetts Appeals Court in connection with Case No. 2001-P-1489;

EXHIBIT J.    <u>Commonwealth v. Gilmore</u>, 441 Mass. 1105, 806 N.E.2d 102 (2004) (table decision), the decision of the Supreme Judicial Court for the Commonwealth of Massachusetts in connection with Case No. FAR-13911;

EXHIBIT K.    Defendant Roderick Gilmore's Request for Further Appellate Review, filed in connection with <u>Commonwealth v. Roderick Gilmore</u>, Case No. FAR-11236 in the Supreme Judicial Court for the Commonwealth of Massachusetts ("First ALOFAR");

EXHIBIT L.    Commonwealth's Opposition to Defendant's Request for Further Appellate Review, filed in connection with <u>Commonwealth v. Roderick Gilmore</u>, Case No. FAR-11236 in the Supreme Judicial Court for the Commonwealth of Massachusetts; and

EXHIBIT M.    Defendant Roderick Gilmore's Application for Leave to Obtain Further Appellate Review, filed in connection with <u>Commonwealth v. Roderick Gilmore</u>, Case No. FAR-13911 in the Supreme Judicial Court for the Commonwealth of Massachusetts ("Second ALOFAR").

Respectfully submitted,

THOMAS F. REILLY
Attorney General

Randall E. Ravitz (BBO # 643381)
Assistant Attorney General
Criminal Bureau
One Ashburton Place
Boston, Massachusetts 02108
(617) 727-2200, ext. 2852

Dated: March 15, 2005

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served on March 15, 2005, by first-class mail, postage prepaid, upon:

Roderick Gilmore
M.C.I. Norfolk
P.O. Box 43
2 Clark Street
Norfolk, MA 02056

pro se

Randall E. Ravitz

**EXHIBIT A**

SUPERIOR COURT, CRIMINAL

INDICTMENT NO. 95245

**COMMONWEALTH**

VS.

Roderick Gilmore
Brockton

| OFFENSE | PLACE | PRESIDING JUSTICE | COURT REPORTER |
|---------|-------|-------------------|----------------|
| Murder  | Brockton | | |

**COUNSEL FOR COMMONWEALTH**

James Sullivan

**COUNSEL FOR DEFENDANT**

Ernest Vesperi, Brockton Public Counsel Services
J. Cunha, Boston
C. Rankin, BOston

**DOCKET ENTRIES**

| DATE | NO. | |
|------|-----|---|
| **1994** | | |
| March 29 | 1 | Returned into court and ordered filed. |
| March 29 | 2 | Copies of indictment sent to Chief Justice & Attorney General. |
| March 29 | | Commonwealth oral request for warrant on indictment granted |
| | 3 | Warrant on indictment issued |
| | | (Xifaras,J.) |
| May 3 | 4 | Notice-Assignment of counsel |
| | 5 | Appearance of Vesperi for deft |
| | | Pleads not guilty |
| | | Ordered held w/o bail |
| | 6 | Special mittimus on indictment issued |
| | | Case cont. to May 12, 1994 for hearing |
| | | (Xifaras, J.) B. St. Charles, court reporter |
| May 6 | | Special mittimus returned with service |
| May 12 | 7 | Copy of indictment given in hand to deft returned with service |
| | | Deft's oral motion for reduction of bail allowed |
| | | prior bail imposed revoked |
| | | Ord. to recog. in the sum of $100,000 cash |

## DOCKET ENTRIES - (CONTINUED)

| DATE | NO. | |
|------|-----|---|
| May 12 | 8 | Special mittimus on indictment issued |
| | | Case cont. to May 19, 1994 for pre-trial conference report |
| May 13 | | Special mittimus on indictment returned with service |
| May 19 | | Case cont. to June 2, 1994 by agreement for pre-trial conference |
| | | (DelVecchio, J.) Y. Perry, court reporter |
| May 12 | 9 | Appearance of Sullivan for Commonwealth |
| May 24 | 10 | Notice-Assignment of counsel PCS |
| June 3 | 11 | Pre-trial conference report |
| June 27 | | Case continued to July 14, 1994 by agreement for motions |
| | | (Graham, J.) Y. Perry, court reporter |
| July 14 | | Case continued to July 21, 1994 by agreement for discovery compliance |
| | | (Mathers, J.) S. Bates, court reporter |
| July 21 | 12 | Motion of the defendant for the production of police reports filed and allowed |
| | 13 | Deft's. motion for a copy of police officer's notes filed and allowed if still in existence |
| | 14 | Deft's. motion for statements of the defendant filed and allowed |
| | 15 | Deft's. motion for written statements of Commonwealth witnesses filed and allowed |
| | 16 | Deft's. motion for medical reports filed and allowed |
| | 17 | Deft's. motion for discovery of tests employed, test data and test results by the Commonwealth experts filed and allowed |
| | 18 | Deft's. motion for copies of photographs filed and allowed |
| | 19 | Deft's. motion for a list of witnesses that Commonwealth anticipates it may call at trial filed and allowed |
| | 20 | Deft's. motion for list of all people interviewed by the police regarding this crime filed and allowed |
| | 21 | Motion of the defendant to be furnished with statements of promises, rewards, inducements or threats filed and allowed |
| | 22 | Deft's. motion for exculpatory evidence filed and allowed |
| | 23 | Deft's. motion for preservation of evidence filed and allowed |
| | | Case continued to August 18, 1994 for discovery compliance by agreement |
| | | (Mathers, J.) S. Bates, court reporter |
| August 18 | | Case continued to September 15, 1994 by agreement for trial assignment |
| | | (Mathers, J.) S. Bates, court reporter |
| August 30 | 24 | Commonwealth's list of potential witnesses |
| | 25 | Commonwealth's answers to defendant's motion for discovery requests |
| Sept. 15 | | Case continued to Nov. 14, 1994 by agreement for trial |
| | | (Mathers,J.) S. Bates, court reporter |
| Sept. 22 | 26 | Commonwealth, motion for reciprocal discovery |
| Nov. 28 | | Case continued to Dec. 12, 1994 by agreement for trial |
| | | (DelVecchio,J.)S. Bates, court reporter. |
| 1995 | | |
| Jan. 4 | | Case continued to Jan. 23, 1995 by agreement. |
| | | (O'Brien,J.) K. Lindelof court reporter |

CONTINUATION SHEET ____ 2

SUPERIOR COURT, CRIMINAL

INDICTMENT NO. 95245

COMMONWEALTH

VS.    RODERICK GILMORE

DOCKET ENTRIES

| DATE 1995 | NO. | DOCKET ENTRIES |
|---|---|---|
| Jan. 31 | | Case continued to March 6, 1995 for trial. |
| | | (Steadman,J.) S. Bates, court reporter. |
| March 6 | 27 | Deft's motion for individual examination of jurors and proposed voir dire questions. |
| | 28 | Commonwealths motion for a view filed and allowed. |
| | | (Steadman,J.) |
| March 7 | 29 | Appearance of Middleton for Commonwealth. |
| | 30 | Deft's motion for sequestration of witnesses filed and allowed, one exception, Torres. |
| | 31 | Jury of 14 members impanelled. |
| | | (Steadman,J.) |
| March 8 | 32 | Notice-Assignment of counsel for witness. |
| | 33 | Appearanc eof Hayes for witness Christina Arsenault. |
| | 34 | Bench warrant issued for witness Carl Harrison. |
| | | Bench warrant returned with service. |
| March 9 | 35 | Commonwealths request for a voir dire on the introductionof prior grand jury testimony. |
| | | as substantive evidence filed and denied. |
| | 36 | Deft's motion for required finding of not guilty at close of Comn's case filed and denied. |
| | 37 | Deft's motionfor required finding of not guilty at close of all evidence filed and denied. |
| | | (Steadman,J.) |
| | 38 | Verdict of Guilty murder in the second degree. |
| | | Sentence life M.C.I. Cedar Junction. (314 days credit). |
| | | $50.00 Victim witness fee imposed. |
| | | Deft. notified of right to appeal case. |
| | 39 | Clerks written statement under S.C. Rule 65 |
| | 40 | Warrant for commitment (with order for assessment). |
| | | (Steadman,J.) S. Bates, court reporter. |
| March 15 | 41 | Deft's appeal from sentence to Cedar Junction filed. |
| March 17 | 42 | Notice to Administrative Justice. Justice, Clerk of Appellate Division and counsels of appeal from. |
| | | sentence to Cedar Junction. |
| March 21 | 43 | Deft's notice of appeal filed. |
| | 44 | NOtice to Justice, D.A. and counsel of notice of appeal |
| | 45 | Clerks certificate that transcript has been ordered from court reporter S. Bates. |
| April 4 | 46 | Deft' smotion after discharge of jury |
| April 10 | 47 | Post Conviction stipulation (Exhibit #7 Bike) |
| April 25 | 48 | Habeas issued for deft. in MCI Concord to appear on April 28, 1995 at Brockton. |
| May 1 | | Deft's motion after discharge of jury, after hearing motion denied (See Order) |
| | | (Steadman,J.) |
| May 3 | 49 | Order on defs's motion to reduce verdict. |
| | | (Steadman,J.) |

| DATE | NO. | DOCKET ENTRIES - (CONTINUED) |
|---|---|---|
| May 8 1996 | 50 | Victim Witness Fee paid |
| March 6 | 51 | Second notice to court reporter S. Bates for transcript |
| May 1 | 52 | Third notice to court reporter S. Bates for transcript at request of defense counsel<br>Transcript (3 volumes) received from court reporter S. Bates |
| July 22 | | |
| Aug. 23 | 53 | Notice to D.A. and counsel that transcript is available (3 volumes) |
| August 26 | 54 | Clerk's certificate that District Attorney has received copy of transcript (3 volumes) |
| September 3 | 55 | Clerk's certificate that defense counsel has received copy of transcript (3 volumes) |
| September 13 | 56 | Record on appeal transmitted to Appeals Court |
| | 57 | Notice to District Attorney and counsel that record on appeal has been transmitted to Appeals Court |
| 1997 April 28 | 58 | ORDER (APPEALS COURT): Appeal dismissed under standing order-17A entered April 8, 1997<br>received April 28, 1997 |
| May 28 | 59 | Deft's motion for new trial |
| 1998 March 2 | | Deft's motion for new trial denied (see memorandum of decision)<br>Memorandum of decision and order on deft's motion for new trial<br>(Hely J.) |
| | 60 | |
| March 4 | 61 | Clerk's certificate that transcript of hearing on 4/28/5 has been ordered from T. Meany at defendant's request |
| March 5 | 62 | Defendant's notice of appeal from denial of motion for new trial |
| March 6 | 63 | Notice to Justice, D.A. and counsel-Notice of appeal |
| March 10 | 64 | Record on appeal transmitted to Appeals Court |
| March 12 | 65 | Notice to D.A. and counsel that record on appeal has been transmitted to Appeals Court |
| | 66 | ORDER (APPEALS COURT): The appeal from denial of the new trial motion is consolidated with the direct appeal without the necessity of further assembly of the record. The consolidated brief appendix are due 4/9/98 or step 2 of standing order 17 shall enter |
| 2000 March 22 | 67 | ORDER (APPEALS COURT): Judgment affirmed, order denying motion for new trial affirmed<br>entered February 22, 2000 |
| August 14 | 68 | Notice of assignment of counsel, Committee for Public Counsel Services |
| 2001 April 2 | 69 | Defendant's pro se motion for waiver of fees and costs for DNA |
| May 2 | | Defendant's pro se motion for waiver of fees and costs for DNA moot (see order)<br>Order on defendant's motion to waive costs and fees for the collection of DNA samples |
| May 2 | 70 | (Gant J.) |
| June 4 | 70A | Defendant's new trial motion |
| June 13 | 71 | Memorandum Request on motion for new trial<br>(Hely J.) |

SUPERIOR COURT, CRIMINAL

INDICTMENT NO. 95245

CONTINUATION SHEET    3

COMMONWEALTH

VS.    RODERICK GILMORE

| DATE | NO. | DOCKET ENTRIES |
|------|-----|----------------|
| 2001 | | |
| July 9 | 72 | Commonwealth's request to enlarge time to file a response memorandum in opposition to defendant's motion for new trial filed and allowed. |
| | | (Hely J.) |
| August 7 | 73 | Commonwealth's request to enlarge time to file a response memorandum in opposition to defendant's motion for new trial filed and allowed. |
| | | (Hely J.) |
| August 29 | 74 | Appearance of Rankin for defendant |
| August 31 | 75 | Commonwealth's memorandum in opposition to defendant's motion for new trial |
| August 31 | 76 | Commonwealth's memorandum in opposition to justice |
| October 5 | 77 | Defendant's motion for new trial denied (see memorandum of decision). |
| | | Memorandum of Decision and order on defendant's second motion for a new trial |
| | | (Hely J.) |
| October 10 | 78 | Def's notice of appeal from denial of motion for new trial |
| October 18 | 79 | Notice to Justice, D.A. and counsel of notice of appeal |
| October 18 | 80 | Record on Appeal transmitted to Appeals Court |
| October 18 | 81 | Notice to D.A. and counsel that record on appeal has been transmitted to Appeals Court |
| 2003 | | |
| October 8 | 82 | ORDER (APPEALS COURT): Order denying second motion for a new trial; Affirmed ent; September 9, 2003 |

95245

**<u>EXHIBIT B</u>**

# APPEALS COURT
## Panel Cases
Case Docket

## COMMONWEALTH vs. RODERICK GILMORE
1996-P-1435

### CASE HEADER

| | | | |
|---|---|---|---|
| Case Status | Closed: Rescript issued | Status Date | 06/06/2000 |
| Nature | CRIMINAL | Entry Date | 09/13/1996 |
| Sub-Nature | MURDER GLTY 2ND DEGREE | SJ Number | |
| Appellant | Defendant | Case Type | Criminal |
| Brief Status | | Brief Due | |
| Panel | Lenk, Gillerman, Rapoza, JJ. | Argued/Submitted | 02/11/1999 |
| Citation | 48 Mass. App. Ct. 1121 | Decision Date | 02/22/2000 |
| Lower Court | Plymouth Superior Court | TC Number | |
| Lower Ct Judge | | TC Entry Date | |

### INVOLVED PARTY / ATTORNEY APPEARANCE

**Commonwealth**
Plaintiff/Appellee
1 Extension

Robert C. Thompson, Esquire

**Roderick Gilmore**
Defendant/Appellant
4 Extensions, 555 Days

John H. Cunha Jr., Esquire

### DOCKET ENTRIES

| Entry Date | Paper | Entry Text |
|---|---|---|
| 09/13/1996 | | TRANS: 3 VOLS 2 SETS CAB I/SHELF 4 |
| 09/13/1996 | #1 | ENTERED. #95245 (BROCKTON) |
| 10/04/1996 | #2 | APPT'S MTN: EXTEND B/A. |
| 10/04/1996 | | RE#2-ALLOWED TO 11/22/96. *NOTICE. |
| 10/07/1996 | #3 | LTR/CPCS RE: ASSIGNMENT OF ATTY JOHN H CUNHA. |
| 01/08/1997 | | NOTICE PRECEDING DISMISSAL: 17A. |
| 01/28/1997 | #4 | APPT'S MTN: EXTEND B/A. |
| 01/28/1997 | | RE#4 ALLOWED TO 3/28/97. NOTICE. |
| 03/28/1997 | #5 | APPT'S MTN: EXTEND B/A. |
| 03/31/1997 | | RE#5 DENIED W/OUT PREJUDICE TO RENEWAL WHEN NEW TRIAL MTN IS FILED. NOTICE. |
| 04/08/1997 | | DISMISSAL: 17A. |
| 04/25/1997 | #6 | NOTICE/DISMISSAL TO TRIAL CT: 17A. IMAGED. |
| 05/28/1997 | #7 | APPT'S MTN: EXTEND B/A. |
| 05/28/1997 | | RE#7 NO ACTION NECESSARY AS APPEAL WAS DISMISSED UNDER SO 17A on 4/25/97. APPT MAY FILE MTN TO REINSTATE APPEAL. *NOTICE. |
| 06/02/1997 | #8 | APPT'S MTN: REINSTATE APPEAL & STAY. |
| 06/06/1997 | | RE#6 MTN TO REINSTATE APPEAL ALLOWED. PROCEEDING STAYED TO 7/7/97. STATUS RPT DUE 7/7/97. (A-P-FL) *NOTICE/ATTEST/ |
| 06/06/1997 | | IMAGED. |

| | |
|---|---|
| 07/07/1997  #9 | APPT'S STATUS REPORT. |
| 07/07/1997 | RE#9 PROCEEDING STAYED TO 8/4/97. STATUS RPT DUE. NOTICE. |
| 08/04/1997  #10 | APPT'S STATUS REPORT. |
| 08/05/1997 | RE#10 PROCEEDING STAYED TO 9/4/97. STATUS RPT DUE. NOTICE. |
| 09/04/1997  #11 | APPT'S STATUS REPORT. |
| 09/05/1997 | RE#11 PROCEEDING STAYED TO 10/8/97. STATUS RPT DUE. NOTICE. |
| 10/08/1997  #12 | APPT'S STATUS REPORT. |
| 10/08/1997 | RE#12 PROCEEDING STAYED TO 11/7/97. STATUS RPT DUE WHICH SHOULD INCLUDE SPECIFIC STEPS TAKEN TO EXPEDITE THIS MATTER BEFORE BRADY, J. *NOTICE. |
| 11/07/1997  #13 | APPT STATUS REPORT. |
| 11/07/1997 | RE#13 PROCEEDINGS STAYED TO 12/9/97. STATUS RPT DUE. *NOTICE. |
| 12/09/1997  #14 | APPT'S STATUS REPORT. |
| 12/09/1997 | RE#14 PROCEEDINGS STAYED TO 1/9/98. STA- TUS RPT DUE ON/BEFORE THAT DATE. NO FURTHER CONTINUANCES/STAYS W/O ASSENT OF DEFT. *NOTICE. |
| 01/09/1998  #15 | APPT'S STATUS REPORT. |
| 01/09/1998 | RE#15 PROCEEDING STAYED TO 2/11/98. STATUS RPT DUE. NOTICE. |
| 03/05/1998 | NOTICE PRECEDING DISMISSAL: 17A. |
| 03/10/1998  #16 | APPT'S MTN: REINSTATE APPEAL W/ATTACH. |
| 03/10/1998 | RE#16 APPEAL FROM DENIAL OF NEW TRIAL MTN IS CONSOLIDATED W/DIRECT APPEAL W/O NECESSITY OF FURTHER ASSEMBLY OF RCD. CONSOLIDATED B/A ARE DUE 4/9/98 OR STEP 2 OF S O 17A SHALL ENTERED. *NOTICE/AT- TEST. |
| 03/18/1998  #17 | APPT'S MTN:CONSOLIDATE BRIEFING SKED. |
| 03/18/1998 | RE#17 APPEAL OF NEW TRIAL MTN WAS CONSOL -IDATED W/PENDING APPEAL BY ORDER OF CT OF 3/10/98.ALL FUTURE FILINGS ARE TO BE MADE UNDER 96-P-1435. APPT'S BRIEF TO BE FILED ON/BEFORE 4/21/98, OR STEP 2 OF S/O 17A SHALL ISSUE. NOTICE |
| 04/22/1998  #18 | APPT'S MTN: FILE OVERSIZED BRIEF. |
| 04/22/1998 | RE#18 ALLOWED. A 52 PAGE BRIEF MAY BE FILED. (B) *NOTICE. |
| 05/01/1998  #19 | APPT'S CERT OF SERVICE: B/A. |
| 05/20/1998  #20 | APLE'S MTN: EXTEND BRIEF. |
| 05/20/1998 | RE#20 ALLOWED TO 8/21/98. *NOTICE. |
| 08/24/1998  #21 | SERVICE of brief for Plaintiff/Appellee Commonwealth. |
| 01/19/1999  #22 | Notice of 02/11/99, 10:00 A.M. argument sent. |
| 02/11/1999 | Oral argument held. (LK G R). |
| 06/29/1999  #23 | Letter pursuant to MRAP 16(l) filed by Roderick Gilmore. |
| 07/12/1999  #24 | MOTION to strike paper #23, filed by Commonwealth. |
| 07/26/1999  #25 | Response to paper #24 filed by Roderick Gilmore. |
| 02/22/2000 | RE#24 Revised Action. Allowed. (Lenk, Gillerman & Rapoza). Notice. |
| 02/22/2000  #26 | Decision: Rule 1:28 (LK G R). Notice. (See image on file.) Judgment affirmed. Order denying motion for new trial affirmed. |
| 03/21/2000 | RESCRIPT to Trial Court. |
| 06/06/2000 | FAR DENIED (on 06/02/00). |

As of 12/28/2003 14:35

**EXHIBIT C**

# APPEALS COURT
## Panel Cases
### Case Docket

## COMMONWEALTH vs. RODERICK GILMORE
### 1998-P-0497

### CASE HEADER

| | | | |
|---|---|---|---|
| **Case Status** | Closed: See other case | **Status Date** | 03/18/1998 |
| **Nature** | CRIMINAL | **Entry Date** | 03/12/1998 |
| **Sub-Nature** | MTN NEW TRIAL | **SJ Number** | |
| **Appellant** | Defendant | **Case Type** | Criminal |
| **Brief Status** | Awaiting blue brief | **Brief Due** | 04/21/1998 |
| **Panel** | | **Argued/Submitted** | |
| **Citation** | | **Decision Date** | |
| **Lower Court** | PLYMOUTH CTY, District | **TC Number** | |
| **Lower Ct Judge** | | **TC Entry Date** | |

| INVOLVED PARTY | ATTORNEY APPEARANCE |
|---|---|
| **Commonwealth**<br>Plaintiff/Appellee | Robert C. Thompson, Esquire |
| **Roderick Gilmore**<br>Defendant/Appellant | John H. Cunha Jr., Esquire |

### DOCKET ENTRIES

| Entry Date | Paper | Entry Text |
|---|---|---|
| 03/12/1998 | | REFERENCE TO 96-P-1435. |
| 03/12/1998 | | NO TRANS: |
| 03/12/1998 | #1 | ENTERED. #95245. (BROCKTON) |
| 03/18/1998 | #2 | APPT'S MTN:CONSOLIDATE BRIEFING SKED. |
| 03/18/1998 | | RE#2 APPEAL OF NEW TRIAL MTN WAS CONSOL -IDATED W/PENDING APPEAL BY ORDER OF CT OF 3/10/98.ALL FUTURE FILINGS ARE TO BE MADE UNDER 96-P-1435. APPT'S BRIEF TO BE FILED ON/BEFORE 4/21/98, OR STEP 2 OF S/O 17A SHALL ISSUE. NOTICE |
| 03/18/1998 | | FOR FURTHER ENTRIES SEE A.C.-96-P-1435. |

As of 12/28/2003 14:35

**EXHIBIT D**

# SUPREME JUDICIAL COURT
## for the Commonwealth
### Case Docket

## COMMONWEALTH vs. RODERICK GILMORE
FAR-11236

### CASE HEADER

| | | | |
|---|---|---|---|
| Case Status | FAR denied | Status Date | 06/02/2000 |
| Nature | Murder2 | Entry Date | 03/20/2000 |
| Appeals Ct Number | 1996-P-1435 | Opposition Date | |
| Appellant | Defendant | Applicant | Defendant |
| Citation | 432 Mass. 1101 | Case Type | Criminal |
| Full Ct Number | | TC Number | |
| Lower Court | Plymouth Superior (Brockton) | Lower Ct Judge | Charles J. Hely, J. |

| INVOLVED PARTY | ATTORNEY APPEARANCE |
|---|---|
| **Commonwealth** Plaintiff/Appellee | Robert C. Thompson, A.D.A. |
| **Roderick Gilmore** Defendant/Appellant | John H. Cunha Jr., Esquire Charles Allen Hope, Esquire |

### DOCKET ENTRIES

| Entry Date | Paper | Entry Text |
|---|---|---|
| 03/20/2000 | | Docket opened. |
| 03/20/2000 | #1 | MOTION to file FAR application late, filed for Roderick Gilmore by John H. Cunha Jr., Esquire. (ALLOWED.) |
| 03/20/2000 | #2 | FAR APPLICATION of Roderick Gilmore, filed by John H. Cunha Jr., Esquire. |
| 03/28/2000 | #3 | OPPOSITION to Paper #1 (Motion to extend time for filing FAR application), filed for Commonwealth by Robert C. Thompson, A.D.A.. (REFERRED TO THE QUORUM.) Notice to counsel. |
| 03/28/2000 | #4 | OPPOSITION to FAR application filed for Commonwealth by Robert C. Thompson, A.D.A.. |
| 04/05/2000 | #5 | Reply to Commonwealth's Oppositions, filed for Roderick Gilmore by John H. Cunha, Jr., Esquire, Charles Allan Hope, Esquire. (Distributed to the quorum) |
| 04/27/2000 | #6 | Action on application deferred. |
| 05/03/2000 | #7 | Letter from John H. Cunha, Jr., Esquire: Counsel submitted a copy the Appeals Court case, 1998-P-1686 to this Court. Distributed to Court and Staff Counsel. |
| 06/02/2000 | #8 | DENIAL of FAR application. |
| 06/09/2000 | #9 | LETTER to Atty. Cunha returning materials forwarded on 5/2/00. |

As of 12/28/2003 14:35

**EXHIBIT E**

# APPEALS COURT
## Panel Cases
### Case Docket

---

### COMMONWEALTH vs. RODERICK GILMORE
2001-P-1489

---

| CASE HEADER | | | |
|---|---|---|---|
| **Case Status** | Closed: Rescript issued | **Status Date** | 04/01/2004 |
| **Nature** | CRIMINAL | **Entry Date** | 10/19/2001 |
| **Sub-Nature** | Den mtn new trial/Murder 2nd deg | **SJ Number** | |
| **Appellant** | Defendant | **Case Type** | Criminal |
| **Brief Status** | | **Brief Due** | |
| **Panel** | Perretta, Cowin, Green, JJ. | **Argued/Submitted** | 01/21/2003 |
| **Citation** | 59 Mass. App. Ct. 231 | **Decision Date** | 09/09/2003 |
| **Lower Court** | Plymouth Superior Court | **TC Number** | |
| **Lower Ct Judge** | Charles J. Hely, J. | **TC Entry Date** | 03/29/1994 |

---

| INVOLVED PARTY | ATTORNEY APPEARANCE |
|---|---|
| **Commonwealth** <br> Plaintiff/Appellee <br> Red brief filed <br> 1 Extension, 63 Days | Robert C. Thompson, A.D.A. |
| **Roderick Gilmore** <br> Defendant/Appellant <br> Blue brief & appendix filed <br> 2 Extensions, 90 Days | Charles W. Rankin, Esquire |

---

### DOCKET ENTRIES

| Entry Date | Paper | Entry Text |
|---|---|---|
| 10/19/2001 | | Transcripts received: NONE |
| 10/19/2001 | | Prior A.C. cases involving same parties: 1996-P-1435, 1998-P-0497. |
| 10/19/2001 | #1 | Entered. |
| 10/24/2001 | #2 | Notice of appearance of Charles Rankin for Roderick Gilmore. |
| 11/28/2001 | #3 | MOTION to extend brief & appendix due date, filed by Roderick Gilmore. |
| 11/28/2001 | | RE#3: Extension to 01/28/2002 granted for filing of brief of Roderick Gilmore, Defendant/Appellant. No further enlargement. Notice. |
| 02/07/2002 | | Notice preceding dismissal: Rule 17A. |
| 02/25/2002 | #4 | MOTION to extend brief & appendix due date, filed by Roderick Gilmore. |
| 02/26/2002 | | RE#4: Allowed. The appellant's brief and appendix are accepted for filing this date. (Brown, J.) *Notice to counsel. |
| 02/26/2002 | #5 | SERVICE of brief & appendix for Defendant/Appellant Roderick Gilmore. |
| 03/26/2002 | #6 | MOTION to extend brief due date of Commonwealth. |
| 03/26/2002 | | RE#6: Extension to 05/30/2002 granted for filing of brief of Commonwealth, Plaintiff/Appellee. No further enlargements. Notice. |
| 05/31/2002 | #7 | SERVICE of brief for Plaintiff/Appellee Commonwealth. |
| 12/13/2002 | #8 | Notice of 01/21/2003, 9:30 A.M. argument at New England School of Law sent. |
| 01/21/2003 | | Oral argument held. (P CW GN). |

| 09/09/2003 | #9 | Decision: Full Opinion (Cowin, J.). Order denying second motion for new trial affirmed. Notice. |
| 10/07/2003 | | RESCRIPT to Trial Court. |
| 12/08/2003 | #10 | Letter from Roderick Gilmore re: request for a copy of docket entries. |
| 12/08/2003 | | Copy of docket sent to Roderick Gilmore. |
| 01/15/2004 | | Copy of FAR application of Roderick Gilmore. |
| 04/01/2004 | | FAR DENIED (on 03/31/04). |

As of 04/02/2004 01:01

**EXHIBIT F**

# SUPREME JUDICIAL COURT
## for the Commonwealth
Case Docket

### COMMONWEALTH vs. RODERICK GILMORE
FAR-13911

## CASE HEADER

| | | | |
|---|---|---|---|
| Case Status | FAR denied | Status Date | 03/31/2004 |
| Nature | Murder2 | Entry Date | 01/14/2004 |
| Appeals Ct Number | 2001-P-1489 | Opposition Date | |
| Appellant | Defendant | Applicant | Defendant |
| Citation | 441 Mass. 1105 | Case Type | Criminal |
| Full Ct Number | | TC Number | |
| Lower Court | Plymouth Superior Court | Lower Ct Judge | Charles J. Hely, J. |

## INVOLVED PARTY

**Commonwealth**
Plaintiff/Appellee

**Roderick Gilmore**
Defendant/Appellant

## ATTORNEY APPEARANCE

Robert C. Thompson, A.D.A.

Charles W. Rankin, Esquire

## DOCKET ENTRIES

| Entry Date | Paper | Entry Text |
|---|---|---|
| 01/14/2004 | | Docket opened. |
| 01/14/2004 | #1 | MOTION to file FAR application late, filed for Roderick Gilmore by Charles W. Rankin, Esquire. *ALLOWED. |
| 01/14/2004 | #2 | FAR APPLICATION of Roderick Gilmore, filed by Charles W. Rankin, Esquire. |
| 01/20/2004 | #3 | MOTION to dismiss late application for leave to obtain Further Appellate Review filed for Commonwealth by Robert C. Thompson, A.D.A. *No action necessary at this time. Notice sent. |
| 03/10/2004 | #4 | Action on application deferred. (3/11 - Requested briefs, Appx., Transcript from Atty. Rankin.) (3/15 - Received: (In 96-P-1435) Brief and separate Appendix for defendant and Brief for Commonwealth; (In 01-P-1489) Brief w/Appendix for defendant and Brief for Commonwealth. - NOTE: Also requested full trial transcript.) (3/16/04 - 3 vols. transcript received.) (4/12/04: All materials returned to Atty. Rankin.) |
| 03/31/2004 | #5 | DENIAL of FAR application. |

As of 04/16/2004 01:01

**EXHIBIT G**

724 N.E.2d 752, 48 Mass.App.Ct. 1121, Com. v. Gilmore, (Mass.App.Ct. 2000)                    **Page 1**

**\*752** 724 N.E.2d 752

48 Mass.App.Ct. 1121

(The Court's decision is referenced in an "Appeals Court of Massachusetts Summary Dispositions" table in the North Eastern Reporter. See MA R A PRAC Rule 1:28.)

Appeals Court of Massachusetts.

**Commonwealth**
**v.**
**Roderick Gilmore**
NO. 96-P-1435
February 22, 2000

No. 96-P-1435.    Judgment affirmed.    Order denying motion for new trial affirmed.

© 2004 West, a Thomson business. No claim to original U.S. Govt. works.

**EXHIBIT H**

733 N.E.2d 1065, 432 Mass. 1101, Com. v. Gilmore, (Mass. 2000)                                                                    **Page 1**

**\*1065** 733 N.E.2d 1065

432 Mass. 1101

(The Court's decision is referenced in a "Supreme Judicial Court of Massachusetts Further Appellate Review" table in the North Eastern Reporter.)

Supreme Judicial Court of Massachusetts.

**Commonwealth**
**v.**
**Roderick Gilmore**
June 02, 2000

Appeal From: 48 Mass.App.Ct. 1121, 724 N.E.2d 752.

DENIED.

© 2004 West, a Thomson business. No claim to original U.S. Govt. works.

**EXHIBIT I**

**\*1284**  794 N.E.2d 1284

59 Mass.App.Ct. 231

Appeals Court of Massachusetts,
Plymouth.

**COMMONWEALTH**
**v.**
**Roderick GILMORE.**

**No. 01-P-1489.**
Argued Jan. 21, 2003.

Decided Sept. 9, 2003.

Defendant was convicted following jury trial of second degree murder. After motion for new trial was denied, defendant appealed. The Appeals Court affirmed both conviction and denial of new trial. Defendant filed post-appeal motion for new trial based on new case law. The Superior Court, Plymouth County, Charles J. Hely, J., denied the motion. Defendant appealed. The Appeals Court, Cowin, J., held that: (1) evidence was sufficient to support instruction on provocation; (2) instruction on voluntary manslaughter which contained provocation instruction was error; and (3) error did not create substantial risk of miscarriage of justice.

Affirmed.

West Headnotes

[1]    Criminal Law ☞1038.1(2)

    110 ----
      110XXIV Review
    110XXIV(E) Presentation and Reservation in Lower Court of Grounds of Review
      110XXIV(E)1 In General
      110k1038 Instructions
      110k1038.1 Objections in General
      110k1038.1(2) Plain or Fundamental Error.

Court heard issue of whether jury instruction on provocation was error at murder trial, although defendant failed to object at trial and failed to raise issue in his direct appeal or first motion for a new trial, as there was a substantial risk of a miscarriage of justice.

[2]    Homicide ☞1385

    203 ----

      203XII Instructions
    203XII(B) Sufficiency
    203k1385 Passion or Provocation.

Evidence at murder trial was sufficient to give instruction on provocation; there was evidence that, if believed, permitted finding that defendant was walking away from verbal confrontation when victim, a much larger man, struck him without warning and advanced on him with intent to additionally harm defendant.

[3]    Homicide ☞671

    203 ----
      203IV Manslaughter
    203k670 Provocation
    203k671 In General.

[See headnote text below]

[3]    Homicide ☞766

    203 ----
      203VI Excusable or Justifiable Homicide
    203VI(B) Self-Defense
    203k766 In General.

Defenses of self-defense and provocation are different, not mutually exclusive, defenses.

[4]    Criminal Law ☞1144.14

    110 ----
      110XXIV Review
    110XXIV(M) Presumptions
    110k1144 Facts or Proceedings Not Shown by Record
    110k1144.14 Instructions.

For the purpose of determining whether a defendant is entitled to an instruction on a given subject, the Appeals court examines the evidence in a light most favorable to the defendant.

[5]    Homicide ☞1391

    203 ----
      203XII Instructions
    203XII(B) Sufficiency
    203k1390 Malice
    203k1391 In General.

Jury instruction at murder trial on voluntary manslaughter, which stated that Commonwealth had to prove beyond reasonable doubt that defendant inflicted

© 2004 West, a Thomson business. No claim to original U.S. Govt. works.

794 N.E.2d 1284, 59 Mass.App.Ct. 231, Com. v. Gilmore, (Mass.App.Ct. 2003)    **Page 2**

injury causing death, that the homicide was unlawful, without legal excuse or justification, and that defendant injured victim as result of sudden combat or reasonably provoked heat of passion incorrectly informed jury that malice is negated by provocation only if provocation is proved beyond reasonable doubt, and thus instruction was error.

[6]    Homicide ☞938

　　203 ----
　　　　203IX Evidence
　　　　203IX(C) Burden of Proof
　　　　203k938 Passion or Provocation.

　　[See headnote text below]

[6]    Homicide ☞1152

　　203 ----
　　　　203IX Evidence
　　　　203IX(G) Weight and Sufficiency
　　　　203k1152 Passion or Provocation.

If the evidence raises the possibility that a homicide defendant may have acted on reasonable provocation, the Commonwealth must prove, and the jury must find, beyond a reasonable doubt that the defendant did not act on reasonable provocation.

[7]    Criminal Law ☞1172.1(3)

　　110 ----
　　　　110XXIV Review
　　　　110XXIV(Q) Harmless and Reversible Error
　　　　110k1172 Instructions
　　　　110k1172.1 In General
　　　　110k1172.1(2) Particular Instructions
　　　　110k1172.1(3) Elements and Incidents of
Offense; Definitions.

Error in jury instruction on voluntary manslaughter, which erroneously informed jury that malice was negated by provocation only if provocation was proved beyond reasonable doubt, did not create substantial risk of miscarriage of justice at murder trial; judge's careful instructions on murder precluded finding of second degree murder without malice and precluded finding of malice without absence of reasonable provocation, jury returned verdict of second degree murder, which was higher crime than manslaughter, and instructions as a whole were otherwise unexceptionable and error-free.

[8]    Criminal Law ☞822(1)

　　110 ----
　　　　110XX Trial
　　　　110XX(G) Instructions:   Necessity, Requisites,
and Sufficiency
　　　　110k822 Construction and Effect of Charge as a
Whole
　　　　110k822(1) In General.

When determining whether error in a jury instruction created a substantial risk of a miscarriage of justice, the task of the Appeals Court is to evaluate the error in the context of the jury charge as a whole, so that it can assess the possible impact of the error on the deliberations of a reasonable juror.

[9]    Homicide ☞658

　　203 ----
　　　　203IV Manslaughter
　　　　203k658    What    Constitutes    Voluntary
Manslaughter, in General.

Voluntary manslaughter is shown where there is an intentional infliction of an injury likely to cause death and actually causing death, together with unlawfulness or a lack of legal justification or excuse.

[10]    Homicide ☞671

　　203 ----
　　　　203IV Manslaughter
　　　　203k670 Provocation
　　　　203k671 In General.

Provocation is a defense to murder.

**\*1285**    Charles W. Rankin, Boston, for the defendant.

Robert C. Thompson, Assistant District Attorney, for the Commonwealth.

Present: PERRETTA, COWIN, & GREEN, JJ.

COWIN, J.

The defendant, having been indicted for murder, G.L. c. 265, § 1, was convicted by a jury of murder in the second degree. His motion for a new trial was denied, and his appeal therefrom was consolidated with his previously filed direct appeal. This court affirmed both the conviction and the order denying the new trial motion in an order and memorandum of decision issued pursuant to Appeals Court Rule 1:28. (FN1) See *Commonwealth v. Gilmore,* 48 Mass.App.Ct.

© 2004 West, a Thomson business. No claim to original U.S. Govt. works.

1121, 724 N.E.2d 752 (2000).

[59 Mass.App.Ct. 232] At the time of trial, as well as at the time of the filing of the defendant's brief in the consolidated appeal, *Commonwealth v. Acevedo,* 427 Mass. 714, 695 N.E.2d 1065 (1998), had not been decided. That decision was released on July 2, 1998, and was referred to in the Commonwealth's brief **\*1286** filed in the consolidated appeal. After oral argument, but before a decision was rendered, the defendant submitted a letter pursuant to Mass.R.A.P. 16(*l*), as amended, 386 Mass. 1247 (1982), arguing for the first time that the instruction on provocation was erroneous in light of *Acevedo.*    We allowed the Commonwealth's motion to strike the rule 16(*l*) letter, and affirmed the conviction without reference to the *Acevedo* issue.

The defendant filed a post-appeal motion for a new trial, asserting that the trial judge had mischaracterized the Commonwealth's burden of proof on the issue of provocation in contravention of the principles set forth in *Commonwealth v. Acevedo, supra* at 716, 695 N.E.2d 1065, and *Commonwealth v. Boucher,* 403 Mass. 659, 661-663, 532 N.E.2d 37 (1989).    In a parallel argument, the defendant contended that the failure both of trial counsel and of prior appellate counsel to identify and challenge the erroneous instruction constituted ineffective assistance of counsel and requires a new trial.  (FN2)  It is the denial of this post-appeal motion and the defendant's appeal therefrom that brings the case back to this court.  We conclude, viewing the jury instructions in their entirety, that the so-called "*Acevedo* error" did not create a substantial risk of a miscarriage of justice in this case, and that consequently, there was no ineffective assistance of counsel.  Accordingly, we affirm the order denying the defendant's second motion for a new trial.

1. *Material facts.*    The jury could permissibly have found the following.  On November 14, 1993, the defendant rode his bicycle to the house of his girlfriend, Christina Arsenault, arriving at about 1:00 *A.M.* He left the bicycle in the back yard and spent the night.  Leaving the next afternoon at about 12:30 P.M., [59 Mass.App.Ct. 233] he discovered that the bicycle was missing.  Returning to the house, he spoke with Christina and, while they were in conversation, he observed the victim, Enrique Torres, ride by on the subject bicycle.

The defendant followed the victim into the hallway of the next house, where he observed the victim apparently working on the bicycle and noticed that

several of the bicycle's accessories had been removed. An argument erupted, the defendant and the victim moving from the hallway to the porch.  The victim claimed initially that the bicycle belonged to him. When the defendant stated that he had papers proving his ownership, the victim then asserted that he had found the bicycle and had fixed and cleaned it.

The defendant stepped off the porch and began to leave.  The victim followed, offering to sell the bicycle to him for twenty dollars.  The defendant refused to pay to purchase his own bicycle, and the two exchanged profanities.  The defendant then decided to forget about the bicycle and simply leave.  As he resumed walking away, he held onto a knife that was in his pocket, while the victim followed, swearing at him. When the defendant turned to say something in return, the victim punched him at least once, and possibly twice, on the head or in the face.  There was evidence that the victim was twenty-eight years old;  five feet, eleven inches in height;  and about 220 pounds in weight.  (FN3)  There was also evidence that the defendant was eighteen years old; five feet, ten **\*1287** inches in height;  and approximately 160 pounds in weight.

Upon being struck by the victim, the defendant responded by taking the knife from his pocket and stabbing the victim once each in the abdomen and in the back.  The defendant testified that he stabbed the victim because he was coming "like he was attacking me again."    Other testimony was conflicting as to whether the victim was approaching the defendant, the victim was retreating, or the two were moving toward each other, when the stabbings occurred.  A third person separated the men, and the defendant and his girlfriend drove from the scene in her automobile.  The entire episode occurred in less than one minute.  [59 Mass.App.Ct. 234] The victim died as a result of the stab wounds.    The medical examiner testified that several superficial cuts on the victim's left hand and wrist were consistent with attempts on his part to fend off an attack.

[1] 2. *Discussion.*  The Commonwealth argues that the defendant has waived any objection to the instruction on provocation by failing to object at trial and then by failing to raise the issue in his direct appeal (FN4) or first motion for a new trial.  The argument may have been available prior to *Acevedo.*    See *Commonwealth v. Boucher,* 403 Mass. at 661-663, 532 N.E.2d 37;  *Commonwealth v. Torres,* 420 Mass. 479, 488-491 & n. 8, 651 N.E.2d 360 (1995).  It should be noted, however, that, despite these decisions, judges routinely continued to deliver provocation instructions

© 2004 West, a Thomson business. No claim to original U.S. Govt. works.

containing the error. (FN5) See *Commonwealth v. Lapage,* 435 Mass. 480, 483 n. 4, 759 N.E.2d 300 (2001). Be that as it may, the defendant is entitled to obtain review of unpreserved issues if there has been an error that created a substantial risk of a miscarriage of justice. See *Commonwealth v. Randolph,* 438 Mass. 290, 294-295, 780 N.E.2d 58 (2002). (FN6)   We therefore turn to the merits.

[2][3]  At the threshold, it must be determined whether the evidence entitled the defendant to an instruction on provocation at all. The principal theory of the defendant at trial was that he acted in self-defense.    The judge's instructions on self-defense, including the use of excessive force in self-defense, were accurate, and the jury obviously rejected the theory. That, however, does not by itself validate the instructions on provocation. These are different, not mutually exclusive, defenses. Assuming that there is evidence that supports a finding that the defendant struck in a [59 Mass.App.Ct. 235] heat of passion, "the defendant is entitled to correct instructions on both provocation and self-defense, and the jury are to have an opportunity to consider voluntary manslaughter on both theories." *Commonwealth v. Lapage, supra* at 486 n. 7, 759 N.E.2d 300.

[4] Here, the judge concluded (correctly, we believe) that the evidence of reasonable *1288   provocation and of the defendant's reaction in the heat of passion was sufficient to require an instruction on the subject. In our decision in the defendant's first appeal, we stated that there was evidence that could have supported either self-defense or provocation. (FN7)  For the purpose of determining whether a defendant is entitled to an instruction on a given subject, we examine the evidence in a light most favorable to the defendant. *Commonwealth v. Randolph, supra* at 299, 780 N.E.2d 58. There was evidence that, if believed, permitted a finding that the defendant was walking away from what to that point had been merely a verbal confrontation when the victim, a much larger man, struck him without warning and advanced on him apparently with intent to do the defendant additional harm. That the defendant killed the victim "from a sudden transport of passion or heat of blood, upon a reasonable provocation and without malice, or upon sudden combat," *Commonwealth v. Soaris,* 275 Mass. 291, 299, 175 N.E. 491 (1931), was a finding that, while certainly not compelled, was at least permissible. Contrast *Commonwealth v. Vinton,* 432 Mass. 180, 189-190, 733 N.E.2d 55 (2000);   *Commonwealth v. Simpson,* 434 Mass. 570, 589-590, 750 N.E.2d 977 (2001);   *Commonwealth v. Sirois,* 437 Mass. 845, 855-856, 777 N.E.2d 125 (2002).

[5][6] One of the judge's instructions to the jury contained the *Acevedo* error. (FN8)   The erroneous *Acevedo* instruction advises the jury that, to justify a verdict of guilty of voluntary manslaughter, the Commonwealth must prove beyond a reasonable doubt three elements:  (1) that the defendant inflicted the injury that caused the victim's death;   (2) that the homicide was unlawful, without legal excuse or justification;   and (3) that the defendant injured the victim as a result of sudden combat or reasonably provoked heat of passion.    See *Commonwealth v. Acevedo,* 427 Mass. at [59 Mass.App.Ct. 236] 716, 695 N.E.2d 1065; To view preceding link please click here   *Commonwealth v. Lapage, supra* at 483-484 & n. 4, 759 N.E.2d 300.  The effect of the instruction is that the jury are incorrectly informed that malice is negated by provocation only if provocation is proved beyond a reasonable doubt.      *Commonwealth v. Acevedo, supra.*  "The correct rule is that, where the evidence raises the possibility that the defendant may have acted on reasonable provocation, the Commonwealth must prove, and the jury must find, beyond a reasonable doubt that the defendant did not act on reasonable provocation."      *Ibid.*  See *Commonwealth v. Boucher,* 403 Mass. at 661, 532 N.E.2d 37.

[7] Therefore, given that there was an error in an instruction to which the defendant was entitled, we decide whether the error created a substantial risk of a miscarriage of justice. The aftermath of *Acevedo* has featured a collection of appellate efforts to determine whether the error in a given instance requires a new trial.    A representative selection is set forth in *Commonwealth v. Rodriguez,* 58 Mass.App.Ct. 610, 614-616, 792 N.E.2d 131 (2003), and nothing is gained by repeating the analysis of that and earlier cases. Some have concluded that, on the instructions as a whole in the particular case, the jury could not have been misled. See *Commonwealth v. Niemic,* 427 Mass. 718, 722, 696 N.E.2d 117 (1998);   *Commonwealth v. Fickling,* 434 Mass. 9, 20, 746 N.E.2d 475 (2001). Others have determined that "the center of gravity of the *1289   provocation instructions was strongly on the side of misstatement." *Commonwealth v. Acevedo, supra* at 717, 695 N.E.2d 1065.

[8] Our task is to evaluate the error "in the context of the charge as a whole, so that [we] can assess the possible impact of the error on the deliberations of a reasonable juror." *Commonwealth v. McLaughlin,* 433 Mass. 558, 560, 744 N.E.2d 47 (2001), quoting from *Commonwealth v. Repoza,* 400 Mass. 516, 519, 510 N.E.2d 755, cert. denied, 484 U.S. 935, 108 S.Ct. 311,

© 2004 West, a Thomson business. No claim to original U.S. Govt. works.

98 L.Ed.2d 270 (1987). Here, the judge first gave a comprehensive and correct charge on the elements of murder in the first and second degrees. He then instructed correctly on self-defense, including that a finding of excessive force in self-defense will support a manslaughter verdict. Next he turned to the other mitigating circumstance that may reduce murder to voluntary manslaughter; explained that "mitigating circumstances operate to negate the element of malice," see *Commonwealth v. Acevedo, supra* at 716, 695 N.E.2d 1065; and detailed what is meant by provocation, [59 Mass.App.Ct. 237] heat of passion, and sudden combat. The judge summarized this portion of the charge with the following statement: "The burden is on the Commonwealth to prove beyond a reasonable doubt that the defendant did not act in the heat of passion and sudden provocation. You may not return a verdict of guilty of murder unless the Commonwealth meets that burden." This formulation was correct. Taken together with the judge's statement that mitigating circumstances negate the element of malice, as well as other statements in the charge, it emphasized the " 'malice'--'no malice' " fork in the road, see *Commonwealth v. Boucher, supra* at 663, 532 N.E.2d 37, and made clear to the jury the only conditions on which there could be a conviction of murder.

[9][10] The *Acevedo* error then materialized. (FN9) The erroneous instruction improperly treats provocation as an element of manslaughter, which it is not. Voluntary manslaughter is shown where there is an intentional infliction of an injury likely to cause death and actually causing death, together with unlawfulness or a lack of legal justification or excuse. *Commonwealth v. Ware,* 53 Mass.App.Ct. 238, 241, 758 N.E.2d 638 (2001),*S.C.,* 438 Mass. 1014, 782 N.E.2d 504 (2003). Provocation is, instead, a defense to murder. *Id.* at 242 n. 2, 758 N.E.2d 638. If it is treated as an element of manslaughter, and the Commonwealth fails to satisfy an erroneously allocated burden of proof on the subject, there is a risk that the jury will be unfairly induced to reject an otherwise supportable verdict of manslaughter and to elect instead a verdict of murder in the second degree (in lieu of acquitting the defendant altogether) even though proof of malice may be lacking.

We are satisfied that that risk is not present in this case. The judge's careful instructions on murder left no doubt that the jury could not return a verdict of murder in the second degree without a finding of malice on the part of the defendant, **\*1290.** and [59 Mass.App.Ct. 238] that in turn a finding of malice required that the Commonwealth prove beyond a reasonable doubt the

absence of reasonable provocation and of a response by the defendant in the heat of passion. The jury presumably followed the judge's instruction that they were to return a verdict of guilty of the highest crime proved. Thus, their verdict of murder in the second degree reflects a rejection of the defense of provocation, see *Commonwealth v. Randolph,* 438 Mass. at 301, 780 N.E.2d 58, thereby rendering the subsequent error in the manslaughter instruction irrelevant.

We observe further that the instructions as a whole were otherwise unexceptionable. The error was located in a portion of the charge that was plainly separate from the instructions on murder, thereby making it highly unlikely that the jury would have combined the conflicting concepts, and the error was not repeated. Contrast *Commonwealth v. McLaughlin,* 433 Mass. at 562, 744 N.E.2d 47; *Commonwealth v. Grant,* 49 Mass.App.Ct. 169, 173, 727 N.E.2d 1207 (2000). (FN10) The judge did not state that each of his instructions should be given equal weight; thus, he did not encourage the jury to give undue attention to the erroneous instruction. See *Commonwealth v. Lapage,* 435 Mass. at 485, 759 N.E.2d 300. The judge emphasized that the defendant never had to prove anything, see *Commonwealth v. Niemic,* 427 Mass. at 721, 696 N.E.2d 117, and there were no other errors in the charge, see *Commonwealth v. Carlino,* 429 Mass. 692, 695, 710 N.E.2d 967 (1999). The judge's additional comment, inserted subsequent to the error, that a verdict of manslaughter is not a compromise, but is instead a permissible verdict if the proved facts fit manslaughter rather than murder, also had the effect of encouraging the jury to keep separate the rules governing murder from those governing manslaughter.

The jury would not have been confused or misled with respect to its obligation to find malice as a necessary element of murder in the second degree. The "center of gravity" of the instructions was not on the side of misstatement. See *Commonwealth v. Acevedo,* 427 Mass. at 717, 695 N.E.2d 1065. The likely effect of the error in this [59 Mass.App.Ct. 239] case was considerably different from those in which the error has required reversal. See *Commonwealth v. Little,* 431 Mass. 782, 787-790, 730 N.E.2d 304 (2000) (error repeated in response to jury question and in subsequently provided written copy of charge); *Commonwealth v. McLaughlin, supra* at 560-562 & nn.2, 3, 744 N.E.2d 47 (incorrect instruction followed by correct instruction, followed by supplemental instruction containing both incorrect and correct formulation, plus other deficiencies); *Commonwealth v. Lapage, supra* at 484-485, 759 N.E.2d 300 (left

© 2004 West, a Thomson business. No claim to original U.S. Govt. works.

unclear that correct instruction was of superior importance to incorrect version); *Commonwealth v. Grant, supra* at 172-173, 727 N.E.2d 1207 (one correct instruction sandwiched between two incorrect instructions); *Commonwealth v. Rodriguez,* 58 Mass.App.Ct. at 618, 792 N.E.2d 131 (incorrect instruction followed by correct instruction, with judge concluding charge by repeating incorrect instruction).

*Order denying motion for new trial affirmed.*

(FN1.) The defendant had argued that (1) the trial judge instructed the jury incorrectly on the subjects of self-defense and manslaughter, specifically with regard to the use of excessive force in self-defense; (2) he was denied effective assistance of trial counsel because counsel "failed to advance a cognizable theory of self-defense, and ... neglected to pursue an argument that there was reasonable provocation"; and (3) the prosecutor improperly appealed to the emotions of the jury.

(FN2.) The trial judge having retired, the defendant's motion was heard and acted on by another Superior Court judge. That second judge had also presided over the defendant's first motion for a new trial.

(FN3.) The victim's weight was taken during the autopsy and had been increased by fluids given the victim in an effort to save his life.

(FN4.) As indicated above, the defendant did submit a letter in his first appeal referring to the *Acevedo* decision, that case having been decided after the filing of the defendant's brief.

(FN5.) The practice continued in some cases even after the *Acevedo* decision was returned. See *Commonwealth v. Rodriguez,* 58 Mass.App.Ct. 610, 612, 792 N.E.2d 131 (2003).

(FN6.) Couching the claim as one based on ineffective

assistance of counsel adds nothing. "Our recent opinions have eliminated this problem by equating the ineffective assistance of counsel standard to the substantial risk standard in cases where waiver stems from an omission by defense counsel.... If we determine that an error has been committed, we ask whether it gives rise to a substantial risk of a miscarriage of justice--ineffectiveness is presumed if the attorney's omission created a substantial risk, and disregarded if it did not." *Commonwealth v. Randolph,* 438 Mass. at 295-296, 780 N.E.2d 58.

**\*1290_** (FN7.) The statement was made in response to the defendant's contention that his trial counsel had been ineffective with respect to his pursuit of these two defenses.

(FN8.) This is not contested by the Commonwealth.

(FN9.) The error emerged in the following formulation: "[I]f ... you find that the Commonwealth has proven beyond a reasonable doubt that the circumstances preceding or attending the killing were caused by adequate and reasonable provocation by the deceased or by an act of sudden combat against the defendant of a kind so as to reasonably excite in him the passion of anger, fear, nervous excitement, or heat of blood and that thereupon the defendant under the influence of such passion and before the cooling of the blood killed the deceased, then you must find the defendant guilty of voluntary manslaughter. If the Commonwealth has not met this burden of proof then you must find the defendant not guilty of voluntary manslaughter."

(FN10.) Isolated, as it was in this charge, in a way that could not have affected the jury's understanding of the concepts associated with murder, the error actually increased the Commonwealth's burden of proof by adding another element to the crime of manslaughter. See *Commonwealth v. Ware,* 53 Mass.App.Ct. at 242, 758 N.E.2d 638.

© 2004 West, a Thomson business. No claim to original U.S. Govt. works.

**EXHIBIT J**

806 N.E.2d 102, 441 Mass. 1105, Com. v. Gilmore, (Mass. 2004)

**\*102** 806 N.E.2d 102

441 Mass. 1105

(The Court's decision is referenced in a "Supreme Judicial Court of Massachusetts Further Appellate Review" table in the North Eastern Reporter.)

Supreme Judicial Court of Massachusetts.

**Commonwealth**

**v.**

**Roderick Gilmore**

March 31, 2004

Appeal From: 59 Mass.App.Ct. 231, 794 N.E.2d 1284. Justice Cowin did not participate.

DENIED.

© 2004 West, a Thomson business. No claim to original U.S. Govt. works.

**EXHIBIT K**

FAR 11236

COMMONWEALTH OF MASSACHUSETTS

PLYMOUTH, ss.                           SUPREME JUDICIAL COURT
                                        NO.

COMMONWEALTH



v.

RODERICK GILMORE

REQUEST FOR FURTHER APPELLATE REVIEW

The defendant, Roderick Gilmore, hereby

requests leave of this Court to receive further

appellate review for his case.

### STATEMENT OF THE CASE

An indictment was returned against the

defendant on March 3, 1994, charging him with the

murder of Enrique Texidor Torres (hereinafter,

"Torres") (R.1,3).[1]  On March 9, 1995, Roderick

Gilmore was found guilty of second degree murder

and sentenced to life in prison at M.C.I., Cedar

Junction (R.2).  The defendant filed a timely

Notice of Appeal on March 21, 1995 (R. 2,4-5).  On

May 23, 1997, defendant filed a Motion for New

Trial (R.18) and a Memorandum in Support of Motion

For New Trial (R.20).  As grounds therefore,

---

[1] The Appeals Court Record Appendix will be
cited herein to page, e.g., (R.1); the trial
transcript to volume and page, e.g., (Tr. 1:1).

defendant claimed error in the trial court's
instructions, ineffective assistance of counsel,
and improper prosecutorial argument (R.18-50).
The trial judge had retired when the Motion for
New Trial was filed, and the matter was referred
to another judge.  On March 2, 1998, the Superior
Court, Hely, J., (herein, the "motion judge")
denied defendant's Motion for New Trial (R.107),
from which defendant filed a timely Notice of
Appeal on March 3, 1998 (R.6-7).  The two appeals
were consolidated by the Appeals Court.[2]

On April 21, 1998, defendant's brief was
filed with the Appeals Court.  In August 1998, the
Commonwealth's brief was filed.  The Appeals Court
heard oral argument on the case on February 9,
1999.  On June 29, 1999, the defendant submitted a
letter to that court pursuant to Mass. R. App. P.
16(1), citing two cases decided after submission
of the defendant's brief which revealed error in
the trial court's instruction regarding a key

---

[2] While the Appeals Court matter was pending,
this Court heard a collateral issue with regards
to the sealing of grand jury minutes in this case.
*In the Matter of a John Doe Grand Jury
Investigation*, 428 Mass. 1016 (1998)

2

issue in the case, provocation.

The Commonwealth moved to strike that letter on July 8, 1999, and the defendant responded to the motion to strike on July 22, 1999.   On February 22, 2000, the Appeals Court issued a nine page Memorandum and Order Pursuant to Rule 1:28 affirming the judgment.   On the same date, without comment, the Appeals Court struck defendant's 16(1) letter.[3]

## STATEMENT OF FACTS RELEVANT TO SELF-DEFENSE AND PROVOCATION INSTRUCTIONS[4]

Eighteen year old (Tr. 1:102) Roderick Gilmore rode his bicycle over to his friend Christina Arsenault's[5] house around 1:00 a.m. on November 14, 1993 (Tr. 2:114-16, 179).   Gilmore left his bicycle in Christina's backyard and spent

---

[3] Although the Appeals Court docket entry for this describes it as a "Revised Action," the defendant is not aware if any prior action on the letter or the Commonwealth's motion had actually been taken.   The issue raised by the Rule 16 (1) letter is contained *infra*, pp. 11-14.

[4] This is an abbreviated version of the fact section in defendant's brief to the Appeals Court, focusing only on the points justifying the giving of self-defense and provocation instructions.

[5] As Christina and her brother Russell Arsenault share the same last name, this brief will refer to them by their first names for reasons of clarity.

3

the night in the house (Tr. 2:116). Christina and
Gilmore awoke around 12:30 p.m. on November 14
(Tr. 2:117). At the request of Debra Vodden,
Christina's mother, Gilmore left the house (Tr.
2:180).

Gilmore walked to the back yard and
discovered that his bicycle was missing (Tr.
2:180). He asked a few people if they had seen
it, but no one knew what he was talking about (Tr.
2:180). He returned to Christina's house and told
her that someone had stolen his bicycle (Tr.
2:118, 181). While they were talking, Christina
saw Torres ride by on Gilmore's bicycle (Tr.
2:118). Christina said to Gilmore, "There goes
your bike right there," and called to Torres to
come back (Tr. 2:119-120). Instead, Torres rode
the bicycle to the front door of 11 Park Street
and brought the bicycle inside (Tr. 1:105; Tr.
2:120, 181).

Gilmore followed Torres into the apartment
building (Tr. 1:105; Tr. 2:181). He found Torres
bent over the bicycle, making some kind of
adjustment with a screwdriver (Tr. 2:181).
Gilmore informed Torres that the bicycle was his

4

and he wanted it back (Tr. 2:181-82).

Torres first claimed that the bicycle belonged to him (Tr. 2:182), then admitted that he had found the bicycle in the yard and "fixed it up" (Tr. 1:107; Tr. 2:123, 182). In fact, the bicycle was nearly new and did not need to be "fixed" (Tr. 2:183). Torres had, however, removed the speedometer, reflector, and water bottle and stripped the handlebars (Tr. 2:183).

After this admission, Gilmore turned and left (Tr. 1:108; Tr. 2:124, 183). Torres followed Gilmore, screaming profanities (Tr. 2:192) which Gilmore returned in kind (Tr. 2:190-92). Torres then told Gilmore that he could have the bicycle for $20 (Tr. 2:127, 183). Gilmore laughed and told Torres he wasn't going to pay for his own bicycle (Tr. 2:183). Gilmore continued walking away, but turned back to say something else (Tr. 1:108; Tr. 2:127, 183).

Without warning, Torres punched Gilmore in the head (Tr. 1:108, 158, 187; Tr. 2:127).[6]  The blow was hard enough that one witness claimed he

---

[6] One witness claimed that Torres hit Gilmore twice (Tr. 1:127, 146).

could feel the impact from across the street (Tr.
1: 158, 187). Torres was a burly 28 year old man,
5'11" tall, weighing 220 pounds (Tr. 2:93);
Gilmore was 18 years old, 5'10" tall, and weighed
about 160 pounds (Tr. 1:102). Gilmore did not at
this point know if Torres still had the
screwdriver he had been using to "fix" the bike
(Tr. 2:182).

Gilmore stepped back a bit, shocked (Tr.
1:109; 2:183, 194). While Torres continued to
come straight at Gilmore, Gilmore stabbed Torres
twice "in the heat of action" (Tr. 1:110, Tr.
2:184, 194-96). Christina's brother Russell raced
up and pulled Gilmore off of Torres (Tr. 1:111-
112, 161-62; Tr. 2:184). Christina screamed for
Gilmore to leave (Tr. 1:110-112) and the two left
(Tr. 1:112; Tr. 2:130).

Enrique Torres died in Brockton Hospital that
night (Tr. 2:84). The cause of death was internal
bleeding from two stab wounds (Tr. 2:106), one to
the abdomen (Tr. 2:95), the second to the back
(Tr. 2:100); the first wound was approximately 6"
deep, the second 3" deep (Tr. 2:100-01). There
were two superficial cuts less than 1" long to the

6

left thumb and wrist, which the pathologist opined
were consistent with injuries sustained trying to
defend oneself (Tr. 2:102-03).

### ISSUES PRESENTED

Whether the trial court's charge to the jury
on the issues of self-defense and provocation were
so erroneous as to create a substantial likelihood
of miscarriage of justice?

### ARGUMENT

I.   **THE TRIAL COURT IMPROPERLY CHARGED THE JURY
     ON THE ISSUES OF SELF-DEFENSE AND
     PROVOCATION.**

   A.   <u>The trial court failed to properly
        charge the jury on "excessive use of
        force in self-defense."</u>

The trial court instructed the jury on the
elements of first degree murder, second degree
murder and manslaughter (Tr. 3:72-88). The court
originally instructed on self-defense as follows:

> [i]f the Commonwealth has failed to
> prove beyond a reasonable doubt the
> defendant did not act in self-defense,
> but the Commonwealth does prove beyond a
> reasonable doubt that the defendant used
> excessive force in defending himself. .
> ., then you <u>may</u> find the defendant
> guilty of a lesser included offense of
> manslaughter.

(Tr. 3:83) (emphasis added). While generally
correct as to the burden of proof, the instruction

7

was flawed in the use of the word "may" rather than "shall," implying that the jury had the option of convicting the defendant of murder even where there was reasonable doubt about self-defense, but not about the use of excessive force.

Subsequently, the court expanded the error by instructing the jury that in order to reduce murder to manslaughter, "[t]he Commonwealth has the burden to prove beyond a reasonable doubt that the defendant killed the deceased by the use of excessive force in self-defense" (Tr. 3:87). After conclusion of the charge, defense counsel asked the court whether the instruction on self-defense as it applied to manslaughter was clear because the court only used the self-defense instruction when discussing murder, not manslaughter (Tr. 3:90). In response, the court gave the jury a supplemental instruction in which it incorrectly repeated that, in order to reduce murder to manslaughter, "the Commonwealth has a burden to prove beyond a reasonable doubt that the defendant killed the deceased by use of excessive force in self-defense" (Tr. 3:91). These last two instructions were clearly erroneous. *Commonwealth*

8

v. *Torres*, 420 Mass. 479, 488-89 (1995).

The jury could only have concluded that in order to reduce murder to manslaughter, the Commonwealth had to prove the mitigating circumstance of excessive self-defense beyond a reasonable doubt. Perhaps more importantly, the jury must have understood the converse as well – that failure to prove the mitigating circumstance beyond a reasonable doubt would result, not in a finding of not guilty, but a verdict of murder.[7]

By making it seem that the Commonwealth had to prove <u>more</u> for a manslaughter conviction, where in reality the defendant would be entitled to a manslaughter conviction based on <u>failure</u> of the Commonwealth's proof, the court defeated the entire purpose for instructing on lesser included

---

[7] Unlike in *Torres*, the court herein never gave a correct instruction and the <u>almost</u> correct instruction in the first instance only; the two subsequent, emphasized instructions were incorrect. Given that the erroneous instruction followed defense counsel's request for clarification, the jury had ample reason to believe that the "clarification", which reinforced the just previous (erroneous) self-defense instruction, must be accurate. In *Torres*, the Court gave the correct instruction, the incorrect instruction, then corrected the error with the proper instruction at the end of that section of the charge. *Torres*, 420 Mass. at 488 n.8.

offenses, which is to avoid "forcing [the jury] to choose between convicting the defendant of an offense not fully established by the evidence or acquitting even though the defendant may be guilty of a lesser offense." *Commonwealth v. Walker*, 426 Mass. 301, 305 (1997). Herein, the jury returned a verdict of second degree murder, the minimum verdict available to it given the improper instructions.[8] Because problems of burden-shifting have a constitutional dimension, *Commonwealth v. Curtis*, 417 Mass. 619, 630 (1994), the instructions must be particularly clean. As the Supreme Court stated in *Francis v. Franklin*, 471 U.S. 307, 322 (1985), "[l]anguage that merely contradicts and does not explain a constitutionally infirm instruction will not suffice to absolve the infirmity"[9] because "[a] reviewing court has no way of knowing which of the

---

[8] The Appeals Court completely missed this point in finding that even if the self-defense instructions were wrong, they could not have effected the jury's deliberations because the verdict was second degree murder. Slip. Op. At 4.

[9] *Contrast Torres*, 420 Mass. at 490 (the *Francis* case inapposite, *inter alia*, because the erroneous instructions were not "constitutionally infirm.").

10

two irreconcilable instructions the jurors applied
in reaching their verdict" (footnote omitted).

B.   The trial court incorrectly instructed
     on the defense of provocation.

The death in this case presents the paradigm
of a homicide that is at most manslaughter – it
arose from "hot blood" on reasonable provocation
and therefore without malice. *See Commonwealth v.
Boucher*, 403 Mass. 659, 661-662 (1989).

All witnesses testified that Gilmore
repeatedly walked away from Torres after the
initial provocation of angrily refusing to return
the stolen bicycle.  Torres followed Gilmore while
they were exchanging shouted vulgarities.  It was
not until Torres stunned and provoked Gilmore by
"sucker punching" him with the force of a six
foot, 220 pound man, 60 pounds heavier than
Gilmore, that Gilmore stabbed Torres "in the heat
of action." (Tr. 2:195-96)[10]

In the classic formulation of Chief Justice

---

[10] Gilmore's testimony that he was angry at
times and not angry at other times, and that he
was not afraid (Tr. 2:187, 189-90, 193), did not
preclude the jury from finding that he was in fact
angry and afraid throughout the altercation.   In
fact, the Commonwealth argued that Gilmore was
motivated by his anger (Tr. 3:41); i.e., the
circumstances provoked a "heat of passion."

Shaw:

> [I]f death, though willfully intended,
> was inflicted immediately after
> provocation given by the deceased,
> supposing that such provocation
> consisted of a <u>blow</u> or an assault, or
> other provocation on his part, which the
> law deems adequate to excite sudden and
> angry passion and create heat of blood,
> this fact rebuts the presumption of
> malice; but still, the homicide being
> unlawful, because a man is bound to curb
> his passions, is criminal, and <u>is</u>
> <u>manslaughter</u>.
> . . .
> The true nature of manslaughter is, that
> it is homicide mitigated out of
> tenderness of the frailty of human
> nature.  Every man, when assailed with
> violence or great rudeness, is inspired
> with a sudden impulse of anger, which
> puts him upon resistance before time for
> cool reflection; an if, during that
> period, he attacks his assailant with a
> weapon likely to endanger life, and
> death ensues, it is regarded as done
> through heat of blood or violence of
> anger, and not through malice, or that
> cold-blooded desire of revenge which
> more properly constitutes the feeling,
> emotion or passion of malice.

*Commonwealth v. Webster*, 5 Cush. 295, 305-308

(1850) (emphasis added).

Herein, the court instructed the jury on

provocation as follows:

> Therefore, if, after the considering
> (sic) all the evidence, you find that
> the Commonwealth has proven beyond a
> reasonable doubt that the circumstances
> preceding or attending the killing were
> caused by adequate and reasonable
> provocation by the deceased or by an act

of sudden combat against the defendant
of a kind so as to reasonably excite in
him the passion of anger, fear, nervous
excitement, or heat of blood and that
thereupon the defendant under the
influence of such passion and before the
cooling of the blood killed the
deceased, then you must find the
defendant guilty of voluntary
manslaughter.
     If the Commonwealth has not met
this burden of proof then you must find
the defendant not guilty of voluntary
manslaughter.

(Tr. 3:87-88). This instruction parses almost

word for word the instruction rejected in

*Commonwealth v. Acevedo*, 427 Mass. 714, 716-717

(1998).[11] The burden shifting fundamentally

damaged the defendant's case. The relationship

between the two defenses, self-defense and

provocation, *see Commonwealth v. Boucher*, 403

Mass. 659, 664 (1989), and the similarity of the

error as to the instruction on each defense,

---

[11] Although the defendant failed to challenge
this instruction in his initial brief, *Acevedo* was
not decided at that time. The defendant called
this error to the attention of the Appeals Court
pursuant to Rule 16(l) of the Rules of Appellate
Procedure after *Acevedo* was drawn to his attention
upon release of *Commonwealth v. Carlino*, 429 Mass.
692 (1999). This letter was filed over seven
months before the decision was reached. The
Appeals Court decision deals with neither of these
cases, and on the same day the decision was
released, the Appeals Court, without comment,
allowed the Commonwealth's motion to strike
defendant's 16(l) letter.

reinforced the jury's misunderstanding about the law they should have applied in this case.

## II.  THE MISTAKEN INSTRUCTIONS POSE A SUBSTANTIAL LIKELIHOOD OF A MISCARRIAGE OF JUSTICE, AND REQUIRE THIS COURT TO GRANT FURTHER APPELLATE REVIEW ON THIS ISSUE

Denying to a jury the right to consider the facts of this case using the proper instructions for provocation and self-defense is a miscarriage of justice.  It is uncontested that the defendant herein was reacting to a larger, older man, who had stolen defendant's bicycle and begun dismantling it, and who initiated the violence by punching the defendant in the head as the defendant was retreating.  Proper self-defense and provocation instructions were essential.

In *Commonwealth v. Carlino*, 429 Mass. 692 (1999), this Court stated that the same error in provocation instructions, in combination with a similar error in self-defense instructions, was sufficient to pose a substantial likelihood of a miscarriage of justice, and required reversal of the first degree murder conviction at issue in *Carlino*, even though trial counsel had not objected to the instruction.  *Carlino,* 429 Mass. at 694-95.  A substantial likelihood of a

14

miscarriage of justice more than meets the
standard for granting further appellate review,
"substantial reasons affecting ... the interests
of justice."   Mass. R. App. P. 27.1 (a)&(e).

Furthermore, the Appeals Court opinion herein
did not even mention *Carlino*, despite having been
directed to it by the defendant's 16(1) letter.
Indeed, it proceeded as if *Carlino* and *Acevedo* had
never been decided.   The only reference in the
Appeals Court opinion to the provocation
instructions merely notes, after stating that
defense counsel at trial presented evidence
supporting both self-defense and provocation
theories, that "[i]nstructions were requested, and
given, on both issues."   (Slip Op. at 6).   Such a
cavalier response to a key issue bearing on the
heart of the defense in a murder case is not in
the interests of justice.

Assuming *arguendo* that the Appeals Court *sub
silencio* found this issue waived, *see* Mass. R.
App. P. 16(a)(4), this Court has held that

> a defendant does not waive a
> constitutional issue by failing to raise
> it before the theory on which his
> argument is premised has been
> sufficiently developed to put him on

15

> notice that the issue is a live issue.
> Counsel need not be 'clairvoyant.'

*Commonwealth v. D'Agostino*, 421 Mass. 281, 284

(1995). *See also Commonwealth v. Federico*, 40

Mass. App. Ct. 616, 617 n.1 (1996); *Commonwealth*

*v. Elder,* 389 Mass. 743, 746 n.6 (1983) (while the

court may treat issues not raised in a defendant's

principal brief as waived, it need not).

Even if this were not the case, *Commonwealth*

*v. Amirault*, 424 Mass. 618, 645-53 (1997), clearly

states that where there is a "substantial risk of

miscarriage of justice," waiver should not be

enforced. *See also Amirault*, 424 Mass. at 653 *et.*

*seq.* (O'Connor, J., *dissenting*, arguing that where

the prior case law was insufficiently developed,

waiver should never be enforced). This is

precisely what *Carlino* holds is true here.

Furthermore, in contrast to the case at bar,

*Amirault* considered a condition in which waiver is

more readily found, *i.e.*, when the case has

reached repose.

16

## CONCLUSION

This Court should grant further appellate review to allow a full and fair review.

                    Respectfully submitted,

                    John H. Cunha Jr.
                    B.B.O. No. 108580

                    Charles Allan Hope
                    B.B.O. 634731

                    CUNHA & HOLCOMB, P.C.
                    One State Street, Suite 500
                    Boston, MA 02109-3507
                    (617) 523-4300

17

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

96-P-1435

COMMONWEALTH

vs.

RODERICK GILMORE.

MEMORANDUM AND ORDER PURSUANT TO RULE 1:28

A jury found the defendant guilty of second degree murder.
On appeal, the defendant claims that: (1) the trial judge
improperly charged the jury on the issues of self-defense and
manslaughter; (2) he was denied the effective assistance of
counsel; and (3) the prosecutor improperly attempted to evoke
sympathy from the jury by referring to the "victim" and by
presenting testimony from the victim's brother.  We affirm.

The trial judge's instructions on self-defense and
manslaughter did not create a substantial risk of a miscarriage
of justice.[1]  See Commonwealth v. Koonce, 418 Mass. 367, 371-372

---

[1]    The defendant argues that, as this is an appeal from
the denial of a motion for new trial, the appropriate standard is
whether it appears that "justice may not have been done,"
Commonwealth v. Gagliardi, 21 Mass. App. Ct. 439, 447-448 (1986),
and not just whether the challenged instructions, which were not
objected to at trial, created a substantial risk of a miscarriage
of justice.  In the absence of an objection at trial to the
instructions now challenged, the trial judge did not consider the
substantive merits of the instructions on the motion for new

(1994).  The defendant argues that on two occasions the trial
judge incorrectly instructed the jury that in order to convict
the defendant of manslaughter, "[t]he Commonwealth has the burden
to prove beyond a reasonable doubt that the defendant killed the
deceased by the use of excessive force in self-defense."  Viewing
the charge as a whole, no reasonable juror could have
misconstrued the judge's instructions.

    "When we review a jury instruction to determine whether the
charge unconstitutionally diminishes the Commonwealth's burden of
proof, we consider 'whether a reasonable juror could have used
the instruction incorrectly.'"  Commonwealth v. Cobb, 45 Mass.
App. Ct. 271, 275 (1998), quoting from Commonwealth v. Anderson,
425 Mass. 685, 688 (1997).  "In making that determination, we
review the instructions to the jury as a whole."  Commonwealth v.
Cobb, supra at 275.  See Commonwealth v. Sellon, 380 Mass. 220,
231-234 (1980); Commonwealth v. Repoza, 400 Mass. 516, 519, cert.
denied, 484 U.S. 935 (1987)("[J]ury instructions are not to be
viewed in isolation but rather in the context of the charge as a

---

trial.  Therefore, we proceed under the standard enunciated in
Commonwealth v. Freeman, 352 Mass. 556, 563-564 (1967).  See
Commonwealth v. Hallet, 427 Mass. 552, 554 (1998)("If a motion
judge has denied a motion for a new trial without considering the
substantive merits of an issue that could have been, but was not,
preserved for full appellate review, the standard of appellate
review of that issue . . . is whether there was an error that
created a substantial risk of a miscarriage of justice.")

whole."). Upon review of the instructions, it is clear that the
trial judge properly charged the jury on the Commonwealth's
burden of proof with regard to the issue of self-defense and the
lesser included offense of manslaughter.

Prior to giving the instructions upon which the defendant
bases this portion of his appeal, the judge correctly charged as
follows:

> "If the Commonwealth has failed to prove beyond a reasonable
> doubt the defendant did not act in self-defense then you
> must find the defendant not guilty of murder . . . If the
> Commonwealth has failed to prove beyond a reasonable doubt
> the defendant did not act in self defense, but the
> Commonwealth does prove beyond a reasonable doubt that the
> defendant used excessive force in defending himself . . .
> then you *may* find the defendant guilty of a lesser included
> offense of manslaughter." (Emphasis supplied.)

It is clear that the supplemental instructions which the
defendant challenges, when read as a whole and in context with
the initial instruction regarding self-defense, correctly
informed the jurors what the Commonwealth was required to prove.²/
They were instructed that, where a defendant has the right to act

---

²/    The trial judge also instructed the jury that: "A
person is entitled to defend himself against a threat to his own
life, but if he uses excessive force, that is, more force than is
reasonably necessary under the circumstances that you find to
exist to avert the threat, and that use of excessive force
results in death [of] the assailant then the killing would
constitute manslaughter. And I think I added at that time the
Commonwealth has a burden to prove beyond a reasonable doubt that
the defendant killed the deceased by use of excessive force in
self-defense."

in self-defense, the burden is on the Commonwealth to prove the use of excessive force which would support a conviction for manslaughter rather than a not guilty verdict on the charge of murder based upon self-defense. Compare <u>Commonwealth</u> v. <u>Koonce</u>, 418 Mass. at 370-375. Contrast <u>Commonwealth</u> v. <u>Kendrick</u>, 351 Mass. 203, 211 (1966).

Similarly, contrary to the defendant's assertion, the trial judge's use of the word "may," rather than "shall," in instructing the jury as to when a conviction for manslaughter could be made did not create a substantial risk of a miscarriage of justice. See <u>Commonwealth</u> v. <u>Torres</u>, 420 Mass. 479, 491-492 (1995)(use of the word "may" in excessive force instruction did not create a substantial risk of a miscarriage of justice). Moreover, implicit in the verdict of murder in the second degree was a finding that the defendant did not act in self-defense. See <u>Commonwealth</u> v. <u>Fitzgerald</u>, 380 Mass. 840, 844 (1980). Accordingly, the jury would not have reached the issue of whether or not the defendant acted with excessive force, and the instruction, even if erroneous, would not have impacted their decision. See <u>Commonwealth</u> v. <u>Torres</u>, 420 Mass. at 493.³/ There

_____

³/ It follows, then, that the defendant's assertion that he received ineffective assistance of counsel as a result of defense counsel's failure to object to the self-defense and manslaughter instructions is without merit. See <u>Commonwealth</u> v.

4

was no substantial risk of a miscarriage of justice.

The defendant's second claim on appeal is that he was denied the right to effective assistance of counsel. He asserts that trial counsel was ineffective because, first, he failed to advance a cognizable theory of self-defense, and, second, he neglected to pursue an argument that there was reasonable provocation, which would have reduced the verdict from murder to manslaughter. Our review of the record reveals no support for the defendant's contention.

At trial, defense counsel competently presented and argued evidence which could have supported either theory. See Commonwealth v. Callahan, 401 Mass. 627, 634-636 (1988); Commonwealth v. Stockwell, 426 Mass. 17, 22 (1997). Trial counsel introduced evidence that the defendant was attempting to leave the scene prior to the stabbing, and that the victim punched the defendant with significant force. Evidence was also presented regarding the victim's size and the fact that he was older than the defendant. Moreover, counsel argued that events took place very quickly, that the defendant did not have a

---

Curtis, 417 Mass. 619, 624-625 n.4 (1994)(an omission by counsel that does not create a substantial risk of a miscarriage of justice cannot form the basis of a successful claim of ineffective assistance). See also Commonwealth v. Evans, 42 Mass. App. Ct. 618, 620-622 (1997).

realistic avenue of retreat, and that he acted only in an effort to protect himself. This evidence was then appropriately emphasized during closing argument. Instructions were requested, and given, on both issues. We conclude that the defense counsel's conduct in this regard did not fall below that which might be expected from an ordinary fallible lawyer and did not deprive the defendant of an otherwise available and substantial ground of defense. Commonwealth v. Saferian, 366 Mass. 89, 96 (1974).

The defendant next maintains that he received ineffective assistance of counsel as a result of his trial counsel's cross-examination of one witness and his decision to call another witness on behalf of the defense. "Judicial scrutiny of counsel's performance must be highly deferential, 'indulg[ing] a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" Commonwealth v. Florentino, 396 Mass. 689, 690 (1986)(citation omitted). "Trial tactics which may appear questionable from the vantage point of hindsight, do not amount to ineffective assistance unless 'manifestly unreasonable' when undertaken." Commonwealth v. Haley, 413 Mass. 770, 777-778 (1992). See Commonwealth v. Sielicki, 391 Mass. 377, 379 (1984). There is nothing in the record before us which would support the conclusion that the

6

actions of the defendant's trial counsel with regard to his cross-examination of a Commonwealth witness and his decision to call another witness on behalf of the defense were "manifestly unreasonable."  Cf. Commonwealth v. Urena, 417 Mass. 692, 696-701 (1994).

Finally, the defendant argues that the prosecution improperly appealed to the emotions of the jury both by presenting evidence from the victim's brother and by referring to the victim as "the victim" during the course of the trial.

There was no error in the prosecutor's references to "the victim" at trial.  While the better practice would have been to refrain from such references, the jury was well aware that the case involved the death of an individual, and it was not disputed that the defendant had stabbed that individual.  Under the circumstances, there was no substantial risk of a miscarriage of justice.  See Commonwealth v. Coleman, 30 Mass. App. Ct. 229, 237 (1991)(stating that while references to "rape" and "victim" should have been avoided, under the circumstances there was no error).

The defendant also contends that the testimony of the victim's brother served only to appeal to the jurors' sympathy. "In cases such as this, there is no error where a member of the victim's family likely to elicit sympathy testifies as to some

7

relevant issue, even a relatively peripheral one and even where another witness could have given the same information without evoking the same level of sympathy from the jury." Commonwealth v. Santiago, 425 Mass. 491, 496-497 (1997). Here, the brother identified the victim, presented testimony which could explain the presence of certain medications detected in the victim's system as well as the fact that he went into convulsions following the stabbing, and provided insight into the victim's character, appearance, and general demeanor which was relevant to the defendant's theory of self-defense. Under the circumstances of this case, the brother's testimony was relevant to issues raised in the case and was not presented merely to garner sympathy for the victim.$^{6/}$ Cf. Commonwealth v. Gordon, 422 Mass. 816, 830-831 (1996)(Court urged caution in "admitting evidence in criminal cases that appears to be more related to evoking

---

$^{6/}$    As the presentation of the brother's testimony did not create a substantial risk of a miscarriage of justice, there is no merit to the defendant's claim that he received ineffective assistance of counsel because trial counsel did not object to the victim's brother as a witness. See Commonwealth v. Curtis, 417 Mass. at 624-625 n.4.

sympathy then [sic] to proving the elements of the alleged
crime or crimes.").

Judgment affirmed.

Order denying motion for
    new trial affirmed.

By the Court (Lenk, Gillerman,
    & Rapoza, JJ.),

Ashley Ahern

Clerk

Entered:   February 22, 2000.

9

**EXHIBIT L**

COMMONWEALTH OF MASSACHUSETTS

PLYMOUTH, SS                         SUPREME JUDICIAL COURT
                                     FAR NO. 11236

COMMONWEALTH

V.

RODERICK GILMORE

## COMMONWEALTH'S OPPOSITION TO DEFENDANT'S REQUEST FOR FURTHER APPELLATE REVIEW

The defendant has not presented any issue worthy of further appellate review.  The claim concerning the instruction on self-defense is sufficiently rebutted by the Appeals Court's opinion.  As stated by that Court, "Upon review of the instructions [as a whole], it is clear that the trial judge properly charged the jury on the Commonwealth's burden of proof with regard to the issue of self-defense and the lesser included offense of manslaughter."  (Appeals Court Opinion, 3).

As for the second claim concerning the provocation instructions, that issue was never properly presented to the Appeals Court or considered by them.  Here, the defendant never tried to raise the issue until after oral argument.  In fact, he took the exact opposite position

on the instructions in his brief in the Appeals Court.

(Def. Br. 30). The only issues open to further appellate

review are issues that were before the Appeals Court.

See Commonwealth v. Lombard, 419 Mass. 585, 593 (1995)

(in general all issues that were before the Appeals Court

"are open to further appellate review"). Where an issue

has not been briefed, argued, or acted upon in the

Appeals Court, there is simply no action by the Appeals

Court to review.

As the Commonwealth stated in its Motion to Strike

the defendant's belated attempt to raise a new issue,

purporting to act pursuant to Mass. R. App. P. 16(1), the

defendant sent a letter to the panel who had already

heard the oral argument in this case, attempting to raise

a new issue that had never been previously briefed or

argued. It was far too late to attempt to raise a new

issue after the appeal had been fully briefed and argued.

See Mass. R. App. P. 16(a)(4) (appellate court need not

pass on issues not raised in primary brief); Commonwealth

v. Keevan, 400 Mass. 557, 562 n.4 (1987) (argument cannot

be raised for first time in reply brief); Ainsle Corp. v.

Commissioner of Revenue, 38 Mass. App. Ct. 360, 364

(1995) (Court does not consider any issue raised for the

first time in reply brief).

2

The defendant claims that the case on which he currently relies, Commonwealth v. Acevedo, 427 Mass. 714 (1998), was not decided when he filed his brief on April 22, 1998. However, it was decided within two and a half months of his brief and was cited on the same issue in the Commonwealth's brief. (Comm. Br. 14-15). Thus, if nothing else, the Commonwealth's brief gave the defendant ample notice of the possibility of an argument based on Acevedo. See Commonwealth v. Amirault, 424 Mass. 618, 643 (1997). Nevertheless, the defendant took no steps to raise the issue in a reply brief or at oral argument. Id. Contrast Commonwealth v. D'Agostino, 421 Mass. 281, 286 (1995) (substance of the defendant's allegedly new argument was raised in the defendant's primary brief); Commonwealth v. Federico, 40 Mass. App. Ct. 616, 617 n.1 (1996) (issue was initially preserved at trial and in motion for new trial).

Further, the defendant relies on the holding in Acevedo, at 716-717, that it was inappropriate to charge on voluntary manslaughter that the Commonwealth had the burden of proving the presence of provocation. However, Acevedo did not state any new rule or establish any new law. To the contrary, in Commonwealth v. Torres, 420 Mass. 479 (1995), decided well before the defendant filed

3

his motion for a new trial, the Supreme Judicial Court unequivocally stated:  "We agree that the judge misstated the law when he instructed that 'in order to prove the defendant guilty of voluntary manslaughter, the Commonwealth must prove … [that] the defendant injured the victim as a result of sudden combat or in the heat of passion.'"  Id. at 488, omissions and bracket in original.  The Torres case gave the defendant clear notice of the possibility of raising an issue concerning the allocation of the burden of proof on provocation.  In fact, in his primary brief, the defendant repeatedly cited Torres for the general proposition that it was inappropriate to give the Commonwealth the burden of proving mitigating circumstances.  (Defendant's Brief at 18, 19, 20 n.16).  The defendant was thus on actual notice of the possibility of raising the issue prior to Acevedo and needed no clairvoyance to raise the issue earlier in his brief.

But instead, the defendant conceded that the provocation instructions were correct.  (Def. Br. 30).  Given the defendant's concession in his brief, the Commonwealth never had either the opportunity or any reason to argue the merits of the defendant's new issue.  In these circumstances, the defendant bound himself by

4

his tactical decision, and it was far too late to change his mind after oral argument.

After considering the above arguments, the Appeals Court allowed the Commonwealth's Motion to Strike. The defendant has not even attempted to suggest that striking his post-argument letter was somehow an abuse of discretion or an error of law. If not, there is nothing in the record from the Appeals Court on the issue the defendant is now attempting to raise.

CONCLUSION

For all the above stated reasons, the defendant's Request for Further Appellate Review should be denied. This Court should not allow a defendant what amounts to free rein to present a case to the Appeals Court on one basis, and then, if it does not appear to be going well after oral argument, to change his mind and seek review on an entirely new unbriefed basis.

Respectfully submitted,

ROBERT C. THOMPSON
Assistant District Attorney
Plymouth District
BBO #547720

APP2604

5

**EXHIBIT M**

FAR 13911

CLERK'S COPY

COMMONWEALTH OF MASSACHUSETTS

SUPREME JUDICIAL COURT

PLYMOUTH, ss.

RECEIVED
SUPREME JUDICIAL COURT
JAN 1 4 2004
FOR THE COMMONWEALTH
SUSAN MELLEN, CLERK

---

FAR No. _____

---

APPEALS COURT NO. 01-P-1489

---

COMMONWEALTH
Appellee

v.

RODERICK GILMORE
Appellant

---

ON APPEAL FROM DENIAL OF NEW TRIAL MOTION

---

APPLICATION FOR LEAVE TO OBTAIN FURTHER APPELLATE REVIEW

---

Charles W. Rankin
Rankin & Sultan
One Commercial Wharf North
Boston, MA  02110
(617) 720-0011

**TABLE OF CONTENTS**

Table of Authorities                                          ii

Application for Leave to Obtain
        Further Appellate Review                              1

Statement of Prior Proceedings                               1

Statement of Facts                                           5

Points with Respect to Which Further
        Appellate Review is Sought                           6

Why Further Appellate Review is Appropriate                  7

        Clairvoyance                                         7

        Application of Substantial Risk
        Standard                                             10

        Ineffective Assistance of Counsel                    13

Conclusion                                                   15

## TABLE OF AUTHORITIES

Commonwealth v. Acevedo
427 Mass. 724 (1998)                    passim

Commonwealth v. Boucher
403 Mass. 659 (1989)                    9

Commonwealth v. Carlino
429 Mass. 622 (1999)                    2

Commonwealth v. Fickling
434 Mass. 9 (2001)                      11

Commonwealth v. Gilmore
59 Mass. App. Ct. 231 (2003)            5

Commonwealth v. LaPage
435 Mass. 480 (2001)                    8, 11

Commonwealth v. Little
431 Mass. 782 (2000)                    13

Commonwealth v. Lynch
439 Mass. 532 (2003)                    11

Commonwealth v. Randolph
438 Mass. 290 (2002)                    7, 9

Commonwealth v. Rembiszewski
391 Mass. 123 (1984)                    7, 8

Commonwealth v. Sowell
34 Mass. App. 229 (1993)                13-14

Gray v. Greer
800 F.2d 644 (7th Cir. 1986)          14

Sandstrom v. Montana
442 U.S. 510 (1979)                     8

Strickland v. Washington
466 U.S. 668 (1984)                     13-14

1. **APPLICATION FOR LEAVE TO OBTAIN FURTHER APPELLATE REVIEW.** Pursuant to Rule 27.1 of the Massachusetts Rules of Appellate Procedure, the appellant Roderick Gilmore moves the Court for an order granting further appellate review in the interests of justice.

2. **STATEMENT OF PRIOR PROCEEDINGS.** Roderick Gilmore was involved in an altercation in Brockton on November 14, 1993 that resulted in the stabbing death of Enrique Torres. The defendant was indicted by a grand jury on March 29, 1994 for murder. Attorney Ernest A. Vesperi was appointed to represent him.

Mr. Gilmore went to trial on March 7, 1995, before the Judge Robert Steadman. The jury convicted the defendant of second degree murder on March 9, 1995 and he was sentenced to life in prison.

Following the appointment of Attorney John H. Cunha Jr., the defendant, on May 23, 1997, filed a motion for a new trial pursuant to Mass. R. Crim. P. 30(b) and a memorandum in support of the motion for new trial. On March 2, 1998, Judge Charles J. Hely denied defendant's motion for new trial. Defendant filed a timely notice of appeal and the direct appeal was

consolidated with the appeal from the denial of the new trial motion.

Gilmore's brief was filed in the Appeals Court on April 21, 1998. He did not raise any issue with respect to the provocation instruction. This Court decided *Commonwealth v. Acevedo*, 427 Mass. 714 on July 2, 1998. The Commonwealth's brief was filed in August 1998, and correctly cited *Acevedo*.

The Appeals Court heard oral argument on the case on February 11, 1999. On June 29, 1999, the defendant submitted a letter to the court pursuant to Mass. R. App. P. 16(1), citing two cases — *Commonwealth v. Acevedo*, 427 Mass. 714 (1998), and *Commonwealth v. Carlino*, 429 Mass 622 (1999) -- which suggested that the trial court's instructions regarding the issue of provocation were erroneous. This was the first time that defense counsel had raised the issue, and he noted that his own

> statement on page 30 of his brief that the judge's instruction herein on provocation was correct must be withdrawn. The judge's instruction on provocation was incorrect . . . making it seem as if the Commonwealth had to prove an additional element for a manslaughter conviction.

In particular, the trial judge had instructed the jury on first and second degree murder, voluntary

2

manslaughter, self defense, and excessive force used in self defense.   Tr. 3/72-91.   With regard to the issue of reasonable provocation, the trial judge, at first, correctly placed the burden of proving the absence of reasonable provocation on the Commonwealth.

> The burden is on the Commonwealth to prove beyond a reasonable doubt that the defendant did not act in the heat of passion and sudden provocation.   You may not return a verdict of guilty of murder unless the Commonwealth meets that burden.

Tr. 3/86-87.   However, the judge later gave the following final, incorrect instruction:

> Therefore, if, after the [sic] considering all the evidence, you find that the Commonwealth has proven beyond a reasonable doubt that the circumstances preceding or attending the killing were caused by adequate and reasonable provocation by the deceased or by an act of sudden combat against the defendant of a kind so as to reasonably excite in him the passion of anger, fear, nervous excitement, or heat of blood and that thereupon the defendant under the influence of such passion and before the cooling of the blood killed the deceased, then you must find the defendant guilty of voluntary manslaughter.
>
> If the Commonwealth has not met this burden of proof then you must find the defendant not guilty of voluntary manslaughter.
>
> Tr. 3/87-88.

The Commonwealth moved to strike the defendant's Rule 16(1) letter on July 8, 1999, and the defendant responded to the motion to strike on July 22, 1999.

3

On March 2, 2000, the Appeals Court issued a
memorandum and order pursuant to Rule 1:28, affirming
the judgment. On the same date, without comment, the
Appeals Court struck defendant's Rule 16(1) letter.
This Court denied the defendant's application for
leave to obtain further appellate review on June 2,
2000.

Following the appointment of undersigned counsel,
defendant filed, on June 1, 2001, a second motion for
a new trial together with a memorandum of law. Judge
Hely issued a memorandum and order denying defendant's
second motion for new trial on October 1, 2001. Since
no objection to the provocation issue had been raised
at trial, the court analyzed the jury instruction only
to determine whether it deprived the defendant of
effective assistance of counsel. Although noting the
erroneous jury instruction, the court emphasized that
the *Acevedo*-like instruction had been preceded by a
correct provocation instruction. The court also noted
that the incorrect instruction had been followed by
the statement: "It [voluntary manslaughter] is a
permissible verdict if, in your judgment, the facts
fit the crime of manslaughter rather than the crime of
murder in the first or second degree if, in fact, you

4

find that the facts support a conviction of any crime at all." Tr. 3/88. The court concluded that the provocation instructions preceding the *Acevedo*-like instruction and the subsequent instruction prevented a shifting of the burden of proof. Therefore, "[t]rial and post-trial counsel were not incompetent on this issue, and they did not deprive the defendant of a substantial ground of defense."

The defendant filed a timely notice of appeal from the denial of his motion for new trial. The Appeals Court rejected the defendant's appeal. The court agreed that an *Acevedo* error had occurred, but found that there was no substantial risk of a miscarriage of justice because the weight of the instructions, read as a whole, correctly conveyed the elements of second degree murder. *Commonwealth v. Gilmore*, 59 Mass. App. Ct. 231 (2003).

3. **STATEMENT OF FACTS.** The Appeals Court accurately summarized the material facts. 59 Mass. App. Ct. at 232-34.

4. **POINTS WITH RESPECT TO WHICH FURTHER APPELLATE REVIEW IS SOUGHT.**

A. Was the appeal incorrectly decided using the substantial risk of miscarriage of justice standard where the failure to have raised the issue earlier should have been excused under the clairvoyance exception to the waiver rule?

B. Even if the Appeals Court acted properly in selecting the substantial risk standard, did it correctly apply that standard in the compelling circumstances of this case?

C. Did the defendant receive ineffective assistance of trial and appellate counsel, in violation of his Sixth Amendment Right to the effective assistance of counsel?

## 5. WHY FURTHER APPELLATE REVIEW IS APPROPRIATE.

**Clairvoyance.** In the Appeals Court, the defendant contended that the failure to raise the *Acevedo* issue earlier should be excused because of the clairvoyance exception to the waiver rule. The Appeals Court did not address that contention at all. Instead, it proceeded to analyze the claim using the substantial risk of a miscarriage of justice standard. This Court should grant further appellate review to settle the question, not previously addressed, whether the clairvoyance doctrine excuses the failure to object to a bad *Acevedo* instruction at trial.

In *Commonwealth v. Randolph*, 438 Mass. 290, 295 (2002), the Court reaffirmed that the clairvoyance exception applies to certain errors of constitutional dimension:

> The third is known as the "clairvoyance" exception, and applies to errors of a constitutional dimension "when the constitutional theory on which the defendant has relied was not sufficiently developed at the time of trial or direct appeal to afford the defendant a genuine opportunity to raise his claim at those junctures of the case." *Commonwealth v. Rembiszewski*, 391 Mass. 123, 126 (1984). In these circumstances we review the claim as if it had been properly preserved.

7

In *Rembiszewski*, 391 Mass. 123, 126 (1984), the Court explained, "If constitutional error has occurred, we reverse the conviction unless the error was harmless beyond a reasonable doubt." Because it involves a "substantial" shift in the burden of proof, *Commonwealth v. Acevedo*, 427 Mass. 714, 717 (1998), the error in this case was of constitutional dimension. *Sandstrom v. Montana*, 442 U.S. 510, 524 (1979), teaches that burden-shifting instructions cannot survive federal due process scrutiny under the Fourteenth Amendment. And if the constitutional standard of review had been applied, there is little doubt that the defendant would be entitled to the granting of a new trial.

The question then is whether the *Acevedo* issue was available to a defendant at trial in March 1995 or on direct appeal in April 1998 when the defendant filed his brief. A footnote in *Commonwealth v. LaPage* 435 Mass. 480, 483 n.4 (2001), suggests that the issue was not available:

> The lack of an objection is not remarkable. The principal infirmity in the instructions was not clearly identified until *Commonwealth v. Acevedo*, 427 Mass. 714, 716 (1998), which was decided after the defendant's trial, although somewhat foreshadowed by dicta in *Commonwealth v.*

8

> *Boucher*, 403 Mass. 659, 661 (1989). The
> deficient instruction we shall discuss
> shortly was in common use in the Superior
> Court at the time of the defendant's trial.

The Court did not decide the applicability *vel nol* of the clairvoyance exception in *Commonwealth v. Randolph*, 438 Mass. 290, 297 (2002), because appellate counsel conceded that the arguments "were available to either trial or prior appellate counsel."

Here the defendant contends that *Boucher* did not sufficiently alert the bench and the bar to this issue.

The Court may also wish to use this case as an opportunity to instruct the bar, as well as the Appeals Court, in how to handle significant caselaw that is decided or brought to the court's attention at some time after the direct appeal has begun. Here, *Acevedo* was decided after defendant's brief was filed in the Appeals Court. It was properly cited by the Commonwealth's brief. Defendant's counsel in the direct appeal did not understand the significance of *Acevedo* until after oral argument in the direct appeal of this case. He then sought to raise the issue using a Rule 16(1) letter. The Appeals Court struck the letter and did not address the issue.

9

It would have been far simpler for the Appeals Court to have permitted additional briefing so that the *Acevedo* issue could have been decided as part of the direct appeal. The wastefulness of not doing so is obvious - the issue, which did not require the taking of any evidence, had to go back to the Superior Court for appointment of a new attorney who could, among other things, argue that prior counsel was ineffective, file a new trial motion, have the motion decided in the Superior Court, and pursue an entirely new appeal. It would be far simpler and more economical if this Court were to suggest that in appropriate cases, the Appeals Court might wish to permit new issues to be raised in the direct appeal process so that wasteful delay and duplication of effort could be eliminated, to say nothing of the possibility of more fairly deciding the entire case, rather than a snippet of the case.

**Application of Substantial Risk Standard.** The defendant contends that even if the Appeals Court correctly decided that the substantial risk standard is appropriate to review the claim, it erred in applying the standard. Here, a review of the facts,

10

set forth in the Appeals Court decision, suggest that a manslaughter verdict would have been an entirely appropriate result.

The Court has decided a number of cases involving *Acevedo* error because the erroneous instruction was in such widespread use in the Superior Court. The defendant contends that his case does not fall within the line of cases such as *Commonwealth v. Fickling*, 434 Mass. 9 (2001), and *Commonwealth v. Lynch*, 439 Mass. 532 (2003). Here, the Court cannot be confident that the jury was guided by the correct instruction, rather than the incorrect instruction.

When the trial judge gives conflicting instructions, the conviction must be reversed unless the judge makes it clear that the incorrect instruction does not govern.

> Although the judge's correct instruction on that subject followed his erroneous instruction, the correct instruction did not make it "clear to the jury" that it carr[ied] more weight than the . . . incorrect one." . . . The judge neither acknowledged nor pointed out to the jury in any meaningful manner that his first instruction on the issue had been erroneous.

*Commonwealth v. LaPage*, 435 Mass. 480, 484-85 (2001).

11

To be sure, the incorrect instruction was not repeated, as in some other cases. However, it was the lengthier of the two instructions on the subject of provocation, and it was the last of the two instructions.

The judge's final provocation instructions mischaracterized the Commonwealth's burden of proof on provocation and resulted in prejudicial error to the defendant. If the jury had been consistently instructed that the Commonwealth had the burden to disprove provocation beyond a reasonable doubt, they might not have found that the defendant acted with malice. The incorrect jury instruction suggested that malice is negated by provocation only if provocation is proved beyond a reasonable doubt. See Acevedo, 427 Mass. at 716. Based on the entire context of the judge's instructions, the jury may well have believed that the fall back position for the Commonwealth's failure to prove the existence of reasonable provocation was the absence of mitigation and, therefore, malice. "[W]hen a defendant is convicted of murder and there is, as there was here, a legitimate issue as to provocation, a clear danger exists that the jury's verdict was the direct result

12

of the erroneous instructions." *Commonwealth v. Little*, 431 Mass. 782, 791 n.7 (2000). Roderick Gilmore's conviction may have been murder by default. In this case, as in *Acevedo*, 427 Mass. at 717, "the judge's last word on the subject was not ambivalent: it was wrong and could only have misled."

**Ineffective Assistance of Counsel.** As general rule, a defendant may not assert, in a motion for new trial, claims of error which he could have raised, but did not raise, at trial or on appeal. *Commonwealth v. Sowell*, 34 Mass. App. Ct. 229, 230 (1993). However, there is a constitutional exception to this waiver rule under the Sixth Amendment, the standard of review for which is governed by *Strickland v. Washington*, 466 U.S. 668 (1984). *Id.* at 231. This standard has been found to be the same for both trial and appellate counsel. *Id.*

*Strickland* posits a two-pronged test for constitutional challenges to the waiver rule. First, the defendant must show that "counsel's performance was deficient" in that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."

13

*Strickland*, 466 U.S. at 687.   Second, the defendant must show that the deficient performance prejudiced the defense in that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*.

Federal courts, in addressing the issue of appellate counsel's effectiveness under the *Strickland* standard, have focused upon whether appellate counsel "'failed to raise a significant and obvious issue . . . which . . . may have resulted in a reversal of the conviction, or an order for a new trial.'" *Sowell*, 34 Mass. App. Ct. at 232 (*quoting Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)).

Both trial and appellate counsel failed to object to erroneous jury instructions that unconstitutionally mischaracterized the prosecution's burden of proof. Trial counsel voiced no objection to the incorrect provocation charge, and appellate counsel stated in his brief that the *Acevedo*-like instructions on provocation were correct.   (Defendant's brief, 30). Appellate counsel only realized and raised the error in a letter to the Appeals Court approximately five months after oral argument, when the court no longer had to consider the issue.

14

## CONCLUSION

For the reasons set forth above, the Court should grant the defendant application for leave to obtain further appellate review.

Respectfully submitted
RODERICK GILMORE
By his attorney,

Charles W. Rankin
BBO No. 411780
Rankin & Sultan
One Commercial Wharf North
Second Floor
Boston, MA 02110
617-720-0011

15

794 N.E.2d 1284
**(Cite as: 59 Mass.App.Ct. 231, 794 N.E.2d 1284)**

Appeals Court of Massachusetts,
Plymouth.

COMMONWEALTH
v.
Roderick **GILMORE.**

No. 01-P-1489.

Argued Jan. 21, 2003.
Decided Sept. 9, 2003.

Defendant was convicted following jury trial of second degree murder. After motion for new trial was denied, defendant appealed. The Appeals Court affirmed both conviction and denial of new trial. Defendant filed post-appeal motion for new trial based on new case law. The Superior Court, Plymouth County, Charles J. Hely, J., denied the motion. Defendant appealed. The Appeals Court, Cowin, J., held that: (1) evidence was sufficient to support instruction on provocation; (2) instruction on voluntary manslaughter which contained provocation instruction was error; and (3) error did not create substantial risk of miscarriage of justice.

Affirmed.

West Headnotes

[1] Criminal Law ☜1038.1(2)
110k1038.1(2)

Court heard issue of whether jury instruction on provocation was error at murder trial, although defendant failed to object at trial and failed to raise issue in his direct appeal or first motion for a new trial, as there was a substantial risk of a miscarriage of justice.

[2] Homicide ☜1385
203k1385

Evidence at murder trial was sufficient to give instruction on provocation; there was evidence that, if believed, permitted finding that defendant was walking away from verbal confrontation when victim, a much larger man, struck him without warning and advanced on him with intent to additionally harm defendant.

[3] Homicide ☜671
203k671

[3] Homicide ☜766
203k766

Defenses of self-defense and provocation are different, not mutually exclusive, defenses.

[4] Criminal Law ☜1144.14
110k1144.14

For the purpose of determining whether a defendant is entitled to an instruction on a given subject, the Appeals court examines the evidence in a light most favorable to the defendant.

[5] Homicide ☜1391
203k1391

Jury instruction at murder trial on voluntary manslaughter, which stated that Commonwealth had to prove beyond reasonable doubt that defendant inflicted injury causing death, that the homicide was unlawful, without legal excuse or justification, and that defendant injured victim as result of sudden combat or reasonably provoked heat of passion incorrectly informed jury that malice is negated by provocation only if provocation is proved beyond reasonable doubt, and thus instruction was error.

[6] Homicide ☜938
203k938

[6] Homicide ☜1152
203k1152

If the evidence raises the possibility that a homicide defendant may have acted on reasonable provocation, the Commonwealth must prove, and the jury must find, beyond a reasonable doubt that the defendant did not act on reasonable provocation.

[7] Criminal Law ☜1172.1(3)
110k1172.1(3)

Error in jury instruction on voluntary manslaughter, which erroneously informed jury that malice was negated by provocation only if provocation was proved beyond reasonable doubt, did not create substantial risk of miscarriage of justice at murder trial; judge's careful instructions on murder precluded finding of second degree murder without malice and precluded finding of malice without absence of reasonable provocation, jury returned verdict of second degree murder, which was higher crime than manslaughter, and instructions as a whole were otherwise unexceptionable and error-free.

[8] Criminal Law ☜822(1)

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

794 N.E.2d 1284
**(Cite as: 59 Mass.App.Ct. 231, 794 N.E.2d 1284)**

110k822(1)

When determining whether error in a jury instruction created a substantial risk of a miscarriage of justice, the task of the Appeals Court is to evaluate the error in the context of the jury charge as a whole, so that it can assess the possible impact of the error on the deliberations of a reasonable juror.

[9] Homicide ⊜⟶658
203k658

Voluntary manslaughter is shown where there is an intentional infliction of an injury likely to cause death and actually causing death, together with unlawfulness or a lack of legal justification or excuse.

[10] Homicide ⊜⟶671
203k671

Provocation is a defense to murder.
**\*\*1285 \*231** Charles W. Rankin, Boston, for the defendant.

Robert C. Thompson, Assistant District Attorney, for the Commonwealth.

Present: PERRETTA, COWIN, & GREEN, JJ.

COWIN, J.

The defendant, having been indicted for murder, G.L. c. 265, § 1, was convicted by a jury of murder in the second degree. His motion for a new trial was denied, and his appeal therefrom was consolidated with his previously filed direct appeal. This court affirmed both the conviction and the order denying the new trial motion in an order and memorandum of decision issued pursuant to Appeals Court Rule 1:28. [FN1] See *Commonwealth v. Gilmore*, 48 Mass.App.Ct. 1121, 724 N.E.2d 752 (2000).

> FN1. The defendant had argued that (1) the trial judge instructed the jury incorrectly on the subjects of self-defense and manslaughter, specifically with regard to the use of excessive force in self-defense; (2) he was denied effective assistance of trial counsel because counsel "failed to advance a cognizable theory of self-defense, and ... neglected to pursue an argument that there was reasonable provocation"; and (3) the prosecutor improperly appealed to the emotions of the jury.

**\*232** At the time of trial, as well as at the time of the filing of the defendant's brief in the consolidated appeal, *Commonwealth v. Acevedo*, 427 Mass. 714, 695 N.E.2d 1065 (1998), had not been decided. That decision was released on July 2, 1998, and was referred to in the Commonwealth's brief **\*\*1286** filed in the consolidated appeal. After oral argument, but before a decision was rendered, the defendant submitted a letter pursuant to Mass.R.A.P. 16(*l* ), as amended, 386 Mass. 1247 (1982), arguing for the first time that the instruction on provocation was erroneous in light of *Acevedo*. We allowed the Commonwealth's motion to strike the rule 16(*l* ) letter, and affirmed the conviction without reference to the *Acevedo* issue.

The defendant filed a post-appeal motion for a new trial, asserting that the trial judge had mischaracterized the Commonwealth's burden of proof on the issue of provocation in contravention of the principles set forth in *Commonwealth v. Acevedo, supra* at 716, 695 N.E.2d 1065, and *Commonwealth v. Boucher,* 403 Mass. 659, 661-663, 532 N.E.2d 37 (1989). In a parallel argument, the defendant contended that the failure both of trial counsel and of prior appellate counsel to identify and challenge the erroneous instruction constituted ineffective assistance of counsel and requires a new trial. [FN2] It is the denial of this post-appeal motion and the defendant's appeal therefrom that brings the case back to this court. We conclude, viewing the jury instructions in their entirety, that the so-called "*Acevedo*" error" did not create a substantial risk of a miscarriage of justice in this case, and that consequently, there was no ineffective assistance of counsel. Accordingly, we affirm the order denying the defendant's second motion for a new trial.

> FN2. The trial judge having retired, the defendant's motion was heard and acted on by another Superior Court judge. That second judge had also presided over the defendant's first motion for a new trial.

1. *Material facts.* The jury could permissibly have found the following. On November 14, 1993, the defendant rode his bicycle to the house of his girlfriend, Christina Arsenault, arriving at about 1:00 *A.M.* He left the bicycle in the back yard and spent the night. Leaving the next afternoon at about 12:30 P.M., **\*233** he discovered that the bicycle was missing. Returning to the house, he spoke with Christina and, while they were in conversation, he observed the victim, Enrique Torres, ride by on the subject bicycle.

The defendant followed the victim into the hallway of

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

the next house, where he observed the victim apparently working on the bicycle and noticed that several of the bicycle's accessories had been removed. An argument erupted, the defendant and the victim moving from the hallway to the porch. The victim claimed initially that the bicycle belonged to him. When the defendant stated that he had papers proving his ownership, the victim then asserted that he had found the bicycle and had fixed and cleaned it.

The defendant stepped off the porch and began to leave. The victim followed, offering to sell the bicycle to him for twenty dollars. The defendant refused to pay to purchase his own bicycle, and the two exchanged profanities. The defendant then decided to forget about the bicycle and simply leave. As he resumed walking away, he held onto a knife that was in his pocket, while the victim followed, swearing at him. When the defendant turned to say something in return, the victim punched him at least once, and possibly twice, on the head or in the face. There was evidence that the victim was twenty-eight years old; five feet, eleven inches in height; and about 220 pounds in weight. [FN3] There was also evidence that the defendant was eighteen years old; five feet, ten **1287 inches in height; and approximately 160 pounds in weight.

> FN3. The victim's weight was taken during the autopsy and had been increased by fluids given the victim in an effort to save his life.

Upon being struck by the victim, the defendant responded by taking the knife from his pocket and stabbing the victim once each in the abdomen and in the back. The defendant testified that he stabbed the victim because he was coming "like he was attacking me again." Other testimony was conflicting as to whether the victim was approaching the defendant, the victim was retreating, or the two were moving toward each other, when the stabbings occurred. A third person separated the men, and the defendant and his girlfriend drove from the scene in her automobile. The entire episode occurred in less than one minute. *234 The victim died as a result of the stab wounds. The medical examiner testified that several superficial cuts on the victim's left hand and wrist were consistent with attempts on his part to fend off an attack.

[1] 2. *Discussion.* The Commonwealth argues that the defendant has waived any objection to the instruction on provocation by failing to object at trial and then by failing to raise the issue in his direct appeal [FN4] or first motion for a new trial. The argument may have

been available prior to *Acevedo.* See *Commonwealth v. Boucher,* 403 Mass. at 661-663, 532 N.E.2d 37; *Commonwealth v. Torres,* 420 Mass. 479, 488-491 & n. 8, 651 N.E.2d 360 (1995). It should be noted, however, that, despite these decisions, judges routinely continued to deliver provocation instructions containing the error. [FN5] See *Commonwealth v. Lapage,* 435 Mass. 480, 483 n. 4, 759 N.E.2d 300 (2001). Be that as it may, the defendant is entitled to obtain review of unpreserved issues if there has been an error that created a substantial risk of a miscarriage of justice. See *Commonwealth v. Randolph,* 438 Mass. 290, 294-295, 780 N.E.2d 58 (2002). [FN6] We therefore turn to the merits.

> FN4. As indicated above, the defendant did submit a letter in his first appeal referring to the *Acevedo* decision, that case having been decided after the filing of the defendant's brief.

> FN5. The practice continued in some cases even after the *Acevedo* decision was returned. See *Commonwealth v. Rodriguez,* 58 Mass.App.Ct. 610, 612, 792 N.E.2d 131 (2003).

> FN6. Couching the claim as one based on ineffective assistance of counsel adds nothing. "Our recent opinions have eliminated this problem by equating the ineffective assistance of counsel standard to the substantial risk standard in cases where waiver stems from an omission by defense counsel.... If we determine that an error has been committed, we ask whether it gives rise to a substantial risk of a miscarriage of justice-- ineffectiveness is presumed if the attorney's omission created a substantial risk, and disregarded if it did not." *Commonwealth v. Randolph,* 438 Mass. at 295-296, 780 N.E.2d 58.

[2][3] At the threshold, it must be determined whether the evidence entitled the defendant to an instruction on provocation at all. The principal theory of the defendant at trial was that he acted in self-defense. The judge's instructions on self-defense, including the use of excessive force in self-defense, were accurate, and the jury obviously rejected the theory. That, however, does not by itself validate the instructions on provocation. These are different, not mutually exclusive, defenses. Assuming that there is evidence that supports a finding that the defendant struck in a *235 heat of passion, "the defendant is entitled to correct instructions on both provocation and self-

defense, and the jury are to have an opportunity to consider voluntary manslaughter on both theories." *Commonwealth v. Lapage, supra* at 486 n. 7, 759 N.E.2d 300.

[4] Here, the judge concluded (correctly, we believe) that the evidence of reasonable \*\*1288 provocation and of the defendant's reaction in the heat of passion was sufficient to require an instruction on the subject. In our decision in the defendant's first appeal, we stated that there was evidence that could have supported either self-defense or provocation. [FN7] For the purpose of determining whether a defendant is entitled to an instruction on a given subject, we examine the evidence in a light most favorable to the defendant. *Commonwealth v. Randolph, supra* at 299, 780 N.E.2d 58. There was evidence that, if believed, permitted a finding that the defendant was walking away from what to that point had been merely a verbal confrontation when the victim, a much larger man, struck him without warning and advanced on him apparently with intent to do the defendant additional harm. That the defendant killed the victim "from a sudden transport of passion or heat of blood, upon a reasonable provocation and without malice, or upon sudden combat," *Commonwealth v. Soaris,* 275 Mass. 291, 299, 175 N.E. 491 (1931), was a finding that, while certainly not compelled, was at least permissible. Contrast *Commonwealth v. Vinton,* 432 Mass. 180, 189-190, 733 N.E.2d 55 (2000); *Commonwealth v. Simpson,* 434 Mass. 570, 589-590, 750 N.E.2d 977 (2001); *Commonwealth v. Sirois,* 437 Mass. 845, 855-856, 777 N.E.2d 125 (2002).

> FN7. The statement was made in response to the defendant's contention that his trial counsel had been ineffective with respect to his pursuit of these two defenses.

[5][6] One of the judge's instructions to the jury contained the *Acevedo* error. [FN8] The erroneous *Acevedo* instruction advises the jury that, to justify a verdict of guilty of voluntary manslaughter, the Commonwealth must prove beyond a reasonable doubt three elements: (1) that the defendant inflicted the injury that caused the victim's death; (2) that the homicide was unlawful, without legal excuse or justification; and (3) that the defendant injured the victim as a result of sudden combat or reasonably provoked heat of passion. See *Commonwealth v. Acevedo,* 427 Mass. at \*236 716, 695 N.E.2d 1065; *Commonwealth v. Lapage, supra* at 483-484 & n. 4, 759 N.E.2d 300. The effect of the instruction is that the jury are incorrectly informed that malice is negated by

provocation only if provocation is proved beyond a reasonable doubt. *Commonwealth v. Acevedo, supra.* "The correct rule is that, where the evidence raises the possibility that the defendant may have acted on reasonable provocation, the Commonwealth must prove, and the jury must find, beyond a reasonable doubt that the defendant did not act on reasonable provocation." *Ibid.* See *Commonwealth v. Boucher,* 403 Mass. at 661, 532 N.E.2d 37.

> FN8. This is not contested by the Commonwealth.

[7] Therefore, given that there was an error in an instruction to which the defendant was entitled, we decide whether the error created a substantial risk of a miscarriage of justice. The aftermath of *Acevedo* has featured a collection of appellate efforts to determine whether the error in a given instance requires a new trial. A representative selection is set forth in *Commonwealth v. Rodriguez,* 58 Mass.App.Ct. 610, 614-616, 792 N.E.2d 131 (2003), and nothing is gained by repeating the analysis of that and earlier cases. Some have concluded that, on the instructions as a whole in the particular case, the jury could not have been misled. See *Commonwealth v. Niemic,* 427 Mass. 718, 722, 696 N.E.2d 117 (1998); *Commonwealth v. Fickling,* 434 Mass. 9, 20, 746 N.E.2d 475 (2001). Others have determined that "the center of gravity of the \*\*1289 provocation instructions was strongly on the side of misstatement." *Commonwealth v. Acevedo, supra* at 717, 695 N.E.2d 1065.

[8] Our task is to evaluate the error "in the context of the charge as a whole, so that [we] can assess the possible impact of the error on the deliberations of a reasonable juror." *Commonwealth v. McLaughlin,* 433 Mass. 558, 560, 744 N.E.2d 47 (2001), quoting from *Commonwealth v. Repoza,* 400 Mass. 516, 519, 510 N.E.2d 755, cert. denied, 484 U.S. 935, 108 S.Ct. 311, 98 L.Ed.2d 270 (1987). Here, the judge first gave a comprehensive and correct charge on the elements of murder in the first and second degrees. He then instructed correctly on self-defense, including that a finding of excessive force in self-defense will support a manslaughter verdict. Next he turned to the other mitigating circumstance that may reduce murder to voluntary manslaughter; explained that "mitigating circumstances operate to negate the element of malice," see *Commonwealth v. Acevedo, supra* at 716, 695 N.E.2d 1065; and detailed what is meant by provocation, \*237 heat of passion, and sudden combat. The judge summarized this portion of the charge with the following statement: "The burden is on the

Commonwealth to prove beyond a reasonable doubt that the defendant did not act in the heat of passion and sudden provocation. You may not return a verdict of guilty of murder unless the Commonwealth meets that burden." This formulation was correct. Taken together with the judge's statement that mitigating circumstances negate the element of malice, as well as other statements in the charge, it emphasized the " 'malice'--'no malice' " fork in the road, see *Commonwealth v. Boucher, supra* at 663, 532 N.E.2d 37, and made clear to the jury the only conditions on which there could be a conviction of murder.

[9][10] The *Acevedo* error then materialized. [FN9] The erroneous instruction improperly treats provocation as an element of manslaughter, which it is not. Voluntary manslaughter is shown where there is an intentional infliction of an injury likely to cause death and actually causing death, together with unlawfulness or a lack of legal justification or excuse. *Commonwealth v. Ware,* 53 Mass.App.Ct. 238, 241, 758 N.E.2d 638 (2001), *S.C.,* 438 Mass. 1014, 782 N.E.2d 504 (2003). Provocation is, instead, a defense to murder. *Id.* at 242 n. 2, 758 N.E.2d 638. If it is treated as an element of manslaughter, and the Commonwealth fails to satisfy an erroneously allocated burden of proof on the subject, there is a risk that the jury will be unfairly induced to reject an otherwise supportable verdict of manslaughter and to elect instead a verdict of murder in the second degree (in lieu of acquitting the defendant altogether) even though proof of malice may be lacking.

> FN9. The error emerged in the following formulation: "[I]f ... you find that the Commonwealth has proven beyond a reasonable doubt that the circumstances preceding or attending the killing were caused by adequate and reasonable provocation by the deceased or by an act of sudden combat against the defendant of a kind so as to reasonably excite in him the passion of anger, fear, nervous excitement, or heat of blood and that thereupon the defendant under the influence of such passion and before the cooling of the blood killed the deceased, then you must find the defendant guilty of voluntary manslaughter. If the Commonwealth has not met this burden of proof then you must find the defendant not guilty of voluntary manslaughter."

We are satisfied that that risk is not present in this case. The judge's careful instructions on murder left no doubt that the jury could not return a verdict of murder in the second degree without a finding of malice on the

part of the defendant, **1290 and *238 that in turn a finding of malice required that the Commonwealth prove beyond a reasonable doubt the absence of reasonable provocation and of a response by the defendant in the heat of passion. The jury presumably followed the judge's instruction that they were to return a verdict of guilty of the highest crime proved. Thus, their verdict of murder in the second degree reflects a rejection of the defense of provocation, see *Commonwealth v. Randolph,* 438 Mass. at 301, 780 N.E.2d 58, thereby rendering the subsequent error in the manslaughter instruction irrelevant.

We observe further that the instructions as a whole were otherwise unexceptionable. The error was located in a portion of the charge that was plainly separate from the instructions on murder, thereby making it highly unlikely that the jury would have combined the conflicting concepts, and the error was not repeated. Contrast *Commonwealth v. McLaughlin,* 433 Mass. at 562, 744 N.E.2d 47; *Commonwealth v. Grant,* 49 Mass.App.Ct. 169, 173, 727 N.E.2d 1207 (2000). [FN10] The judge did not state that each of his instructions should be given equal weight; thus, he did not encourage the jury to give undue attention to the erroneous instruction. See *Commonwealth v. Lapage,* 435 Mass. at 485, 759 N.E.2d 300. The judge emphasized that the defendant never had to prove anything, see *Commonwealth v. Niemic,* 427 Mass. at 721, 696 N.E.2d 117, and there were no other errors in the charge, see *Commonwealth v. Carlino,* 429 Mass. 692, 695, 710 N.E.2d 967 (1999). The judge's additional comment, inserted subsequent to the error, that a verdict of manslaughter is not a compromise, but is instead a permissible verdict if the proved facts fit manslaughter rather than murder, also had the effect of encouraging the jury to keep separate the rules governing murder from those governing manslaughter.

> FN10. Isolated, as it was in this charge, in a way that could not have affected the jury's understanding of the concepts associated with murder, the error actually increased the Commonwealth's burden of proof by adding another element to the crime of manslaughter. See *Commonwealth v. Ware,* 53 Mass.App.Ct. at 242, 758 N.E.2d 638.

The jury would not have been confused or misled with respect to its obligation to find malice as a necessary element of murder in the second degree. The "center of gravity" of the instructions was not on the side of misstatement. See *Commonwealth v. Acevedo,* 427 Mass. at 717, 695 N.E.2d 1065. The likely effect of the error in this *239 case was considerably different

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

794 N.E.2d 1284
(Cite as: 59 Mass.App.Ct. 231, *239,  794 N.E.2d 1284, **1290)

from those in which the error has required reversal. See *Commonwealth v. Little,* 431 Mass. 782, 787-790, 730 N.E.2d 304 (2000) (error repeated in response to jury question and in subsequently provided written copy of charge); *Commonwealth v. McLaughlin, supra* at 560-562 & nn.2, 3, 744 N.E.2d 47 (incorrect instruction followed by correct instruction, followed by supplemental instruction containing both incorrect and correct formulation, plus other deficiencies); *Commonwealth v. Lapage, supra* at 484-485, 759 N.E.2d 300 (left unclear that correct instruction was of superior importance to incorrect version); *Commonwealth v. Grant, supra* at 172-173, 727 N.E.2d 1207 (one correct instruction sandwiched between two incorrect instructions); *Commonwealth v. Rodriguez,* 58 Mass.App.Ct. at 618, 792 N.E.2d 131 (incorrect instruction followed by correct instruction, with judge concluding charge by repeating incorrect instruction).

*Order denying motion for new trial affirmed.*

794 N.E.2d 1284, 59 Mass.App.Ct. 231

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works