UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| RODERICK GILMORE,         )<br>                           )<br>    Petitioner,              )<br>                           )<br> v.                        )<br>                           )<br> LUIS SPENCER,             )<br>                           )<br>    Respondent.            )<br>                           ) | Civil Action No. 05-10127-PBS |

### RESPONDENT'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF HIS MOTION TO DISMISS

Respondent Luis Spencer, Superintendent of the Massachusetts Correctional Institute at Norfolk (the "Respondent"), hereby submits this Supplemental Memorandum in Support of His Motion to Dismiss. This Memorandum addresses the additional information in the Supplemental Affidavit and supporting materials supplied by Petitioner Roderick Gilmore (the "Petitioner") upon this Court's request concerning the circumstances surrounding the filing of his Habeas Corpus Petition (the "Petition").

### BACKGROUND

The Petitioner is currently serving a sentence at the Massachusetts Correctional Institution at Norfolk ("MCI-Norfolk"). (Pet.) He was convicted in the Plymouth County, Massachusetts, Superior Court (the "Superior Court") of murder in the second degree on March 9, 1995. (Super. Ct. Docket.) See also Commonwealth v. Gilmore, 59 Mass. App. Ct. 231, 331, 794 N.E.2d 1284, 1285 (2003). In a February 22, 2000 decision, the Massachusetts Appeals Court (the "Appeals Court") affirmed the judgment against him and the Superior Court's denial of his first Motion for New Trial. (App. Ct. Docket No. 1996-P-1435.) On June 2, 2000, the

Massachusetts Supreme Judicial Court ("SJC") denied his application for further appellate review of these decisions.  (SJC Docket No. FAR-11236.)  Commonwealth v. Gilmore, 432 Mass. 1101, 733 N.E.2d 1065 (2000) (table decision).  The Petitioner then filed a second Motion for a New Trial on June 4, 2001, which was denied by the Superior Court on October 5, 2001.  (Super. Ct. Docket).  The Appeals Court affirmed that decision on September 9, 2003, and the SJC denied further appellate review on March 31, 2004.  (App. Ct. Docket No. 2001-P-1489; SJC Docket No. FAR-13911).  Commonwealth v. Gilmore, 441 Mass. 1105, 806 N.E.2d 102 (2004) (table decision).

It was not until January 10, 2005 that the U.S. District Court received the Petitioner's Petition, along with an Application to Proceed Without Prepayment of Fees and a Motion for Appointment of Counsel.  At the bottom of each of these documents appeared the following: "May   , 2004."  (Pet. at 7; Application Proceed Without Prepayment Fees at 2; Mot. Appointment Counsel at 1.)  Apparently, these filings were accompanied by two cover letters to the Court Clerk.  (Mem. & Order of Jan. 25, 2005.)  The first was dated "May, 2004" and referenced a habeas petition and a $5.00 check.  (Id.)  The second was dated January 3, 2005 and stated that "'[t]he Department of Correction has determined that the petition and the enclosed check was lost and therefore have submitted a new check for the filing.'"  (Id.)[1]

On March 15, 2005, the Respondent filed a Motion to Dismiss on the grounds that the Petition was time-barred under 28 U.S.C. § 2244(1).  (Resp't's Mot. Dismiss; Resp't's Mem. Supp. Mot. Dismiss.)  The Petitioner filed an Opposition to the Respondent's Motion to Dismiss,

---

[1] Copies of these letters were not served upon the Respondent or placed on the docket.  The Respondent is in the process of seeking to obtain such copies.  While a letter purporting to be a copy of the first letter referenced above was attached to the Respondent's Supplemental Affidavit, it is dated May 13, 2004 and thus might not be a copy of the letter that was actually sent to the Court.  (Pet'r's Suppl. Aff.)

along with a supporting Memorandum of Law and Affidavit on March 28, 2005. In those papers, he asserted that he "filed his writ of habeas corpus on or about May 14, 2004, when the check was initially placed in the mail box" and was thus "diligent" and "timely." (Pet'r's Opp'n Mot. Dismiss; Pet'r's Mem. Supp. Opp'n Mot. Dismiss; Pet'r's Aff. Supp. Opp'n Mot. Dismiss.) He argued that "[t]his Court has established that the time a prisoner places a letter or petition within the Prisons' mailbox, the item in question is timely filed." (Pet'r's Mem. Supp. Opp'n Mot. Dismiss.) Appended to these papers were two letters from Rebecca Greenberg, Pro Se Staff Attorney at the U.S. District Court Clerk's Office, one dated November 22, 2004, and the other dated November 23, 2004. The first of these acknowledged a November 8, 2004 letter from the Petitioner requesting information on the status of a habeas corpus petition that he claimed to have filed in May 2004, and indicated that the Clerk's Office had no record of such a filing. (Letter from Greenberg to Gilmore of Nov. 22, 2004.) The second confirmed that MCI-Norfolk's Treasurer reported that the prison issued a $5.00 check made payable to the U.S. District Court on the Petitioner's behalf on May 14, 2004. (Letter from Greenberg to Gilmore of Nov. 23, 2004.)

The papers filed by the Petitioner in opposition to the Respondent's Motion to Dismiss also included assertions that were inaccurate. Specifically, he indicated that both Attorney Greenberg's November 23, 2004 letter and statements by representatives of the Respondent confirmed that he timely mailed his Petition. (Pet'r's Mem. Supp. Opp'n Mot. Dismiss at 1-2 (stating that "the petitioner filed his writ of habeas corpus on or about May 14, 2004, when the check was initially placed in the mail box and confirmed by the Treasurer at MCI-Norfolk. (See Exhibit 'A', which verifies that the department of corrections, under the Respondent states was filed through her office) [sic]," that the November 23 letter "firmly establishes that the petitioner

3

has made diligent efforts to assure that his petition was timely filed," and that "[b]y the Respondent's own admission the petitioner has timely filed his petition and therefore entitled to the relief therein sought [sic]").)  In fact, Attorney Greenberg's letter merely confirmed that an appropriate check was issued on May 14, 2004, but not that the Petitioner timely mailed that check and his Petition.  (Letter from Greenberg to Gilmore dated Nov. 23, 2004.)  Moreover, the Respondent has never taken the position that the Petitioner timely filed his Petition, as made clear by his Motion to Dismiss and supporting Memorandum.  (Resp't's Mot. Dismiss; Resp't's Mem. Supp. Mot. Dismiss.)

On May 23, 2005, the Respondent's Motion to Dismiss was referred to Magistrate Judge Sorokin, who issued an Order on June 24, 2005 stating in its entirety as follows:

> Petitioner Roderick Gilmore is hereby ORDERED to file a supplemental Affidavit describing in detail when and how he filed his petition including a description of what he did after MCI Norfolk issued a $5.00 check payable to the U.S. District Court.  Petitioner may attach copies of any relevant documents or receipts that have not already been provided to the Court.
>
> Petitioner shall file this Supplemental Affidavit no later than July 25, 2005.

(Order of Jun. 24, 2005.)

A service copy of the Supplemental Affidavit prepared by the Petitioner pursuant to this Order was received by the Respondent's counsel on July 14, 2005.[2]  Therein the Petitioner stated

---

[2] In addition to the foregoing, on March 22, 2005, this Court issued a Briefing Order directing the Petitioner to file and serve a brief in support of his Petition by April 22, 2005, and directing the Respondent to file and serve a brief in opposition to the Petition by May 23, 2005.  The Petitioner filed a Brief and accompanying Memorandum on April 26, 2005.  On May 23, 2005, the Respondent filed a Motion for Enlargement of Time in Which to File Brief in Opposition to Petition (the "Motion for Enlargement"), which was referred to Magistrate Judge Leo T. Sorokin on May 24, 2005.  On that date, Magistrate Judge Sorokin issued an Order on the Motion for Enlargement extending the deadline for the filing of the Respondent's brief to thirty days after

4

in part that he "promptly prepare a Petition for Writ of habeas Corpus pursuant to 28 U.S.C. § 2254 and mailed to through the Prison Mail System, requesting that it be forwarded to Treasurer Department so that a check in the amount of Five dollars will accommodate the same [sic]" and that "the envelope containing the petition was open, so that the Treasurer Office could place the check therein [sic]." (Pet'r's Suppl. Aff. ¶¶ 2, 7.) He also noted that he "forwarded another request for a check" on January 3, 2005 and "mailed another check." (Id. ¶¶ 4, 5.) He did not provide the precise dates on which he claimed to have mailed his Petition or indicate whether postage was affixed on either occasion. (Id.) The Petitioner did, however, attach the following: a typed cover letter to the District Court Clerk dated "May 13th, 2004" (in which "13th" was inserted in handwriting); additional copies of the November 22 and November 23, 2004 letters from Attorney Greenberg; an Inmate Transaction Report beginning on May 14, 2005; a charge slip reflecting a $5.00 charge for U.S. District Court filing fees, which slip is dated January 3, 2005, but indicates that the charge was processed on January 6, 2005; a Notice of Electronic Filing concerning this Court's Memorandum and Order of January 25, 2005; a January 8, 2005 letter to the Treasurer of MCI-Norfolk; and a February 15, 2005 receipt for a money order to the U.S. District Court. (Pet'r's Suppl. Aff. Exs. A-H.)

## ARGUMENT

I. **This Court should either decline to apply or limit the application of the "prison mailbox rule" here.**

Even if the Petitioner did attempt to mail an initial copy of his Petition in May 2004, he should not be entitled to take advantage of the "prison mailbox rule" with respect to such an attempt. Under that rule, a pro se inmate's paper is deemed timely if it is deposited in the

---

the date of the ruling on the Respondent's Motion to Dismiss. (Order on Resp't's Mot. Enlargement.)

prison's internal mail system on or before the filing deadline. See Donovan v. Maine, 276 F.3d 87, 90 (1st Cir. 2001) (applying prison mailbox rule to pro se federal habeas petition); see also Houston v. Lack, 487 U.S. 266, 270-72 (applying prison mailbox rule to notices of appeal filed by pro se inmates); Morales-Rivera v. United States, 184 F.3d 109, 109-10 (1st Cir. 1999) (applying prison mailbox rule to motions filed by pro se inmates in habeas corpus cases).[3] It has been found inapplicable, however, where a filing was never received by the appropriate court and the petitioner excessively delayed in determining its status and filing another copy. See United States ex rel. Johnson v. Briley, 2004 WL 1276717, at *2-3 (N.D. Ill. 2004). Specifically, in a situation resembling the one at bar, the Briley court determined that the prison mailbox rule did not apply to the petitioner's alleged unsuccessful attempt to mail a state post-conviction petition to the state court, and thus the alleged attempt did not toll the statute of limitations for federal habeas petitions. Id. The court reasoned as follows:

> [T]he mailbox rule is not enough to make [the petitioner's] petition timely. By late September of 1998 (after he received the clerk's September 11, 1998 letter), he knew that he did not have a petition on file. He nevertheless waited almost a year later to try again. The mailbox rule allows the court to consider a petition filed as of the date it is placed into the prison's mail system, as opposed to the date that it is actually received. It does not, however, automatically allow a prisoner to use the date that a document was placed in the prison mail system for later filings when the first document was not received (either because it was never sent out or was lost in the mail).
>
> In other words, the mailbox rule cannot be used to endlessly extend the limitations period by deeming a series of documents "filed" as of the date that an initial document is placed in the prison mail system with prepaid postage when that initial document never makes it to the court. This is especially true in this case given that [the petitioner] waited almost a year after learning that his original habeas petition had not been filed and, indeed, appeared to not have been mailed in the first place. Perhaps things

---

[3] As discussed infra, the prison mailbox rule was codified in Rule 3(d) of the Rules Governing Section 2254 Cases (the "Habeas Corpus Rules"), by way of an amendment that was adopted on April 26, 2004 and became effective on December 1, 2004. See Habeas Corpus Rule 3 notes.

>might have been different had [the petitioner] diligently followed up on his 1998 mailing to make sure it arrived properly and then sprang into action when he learned that it had not arrived. But that is not the case before the court. Accordingly, [the petitioner] is not entitled to use the 1998 filing date. This means that his federal habeas petition is untimely and must be dismissed.

Id.  The Briley court's conclusion is consistent with the language that was eventually incorporated into Habeas Corpus Rule 3(d), which applies the prison mailbox rule only to a "paper *filed* by an inmate."

The situation in the instant case is little different than that in Briley.  This Court never received any petition that had been mailed in May 2004.  The Petitioner, however, did not seek to ascertain the status of his Petition until nearly six months after his alleged attempt to mail it.  Upon learning that no such petition had been filed, he waited at least another five and a half weeks before mailing what he claims was nothing more than a photocopy of his initial Petition.  This Court's lack of receipt of his alleged mailing, combined with his own lack of diligence, militates against application of the mailbox rule with respect to any attempt by the Petitioner to mail his Petition in May 2004.  His Petition should thus be treated as having been filed no earlier than January 2005.

As an alternative to finding the prison mailbox rule inapplicable, this Court should find that the period of limitations re-started upon the Petitioner's learning that the initial copy of his Petition had not been successfully filed in or around May 2004.  In other words, the Court should view the limitations period as having merely been tolled during the time in 2004 in which the Petitioner allegedly believed that his action was proceeding.

If such an approach is employed here, the Petition would not necessarily be untimely if it was in fact mailed initially on May 14, 2005 and again on January 3, 2005.  However, it would be untimely if it was mailed even a week later in either instance.  The period of limitations in this

case began running on August 31, 2000, upon the expiration of the ninety days afforded for the Petitioner to seek certiorari with the United States Supreme Court following the SJC's denial of further appellate review.  See David v. Hall, 318 F.3d 343, 345 (1st Cir. 2003) (indicating that, where petitioner's conviction had been affirmed on direct appeal, period of limitations would begin upon expiration of ninety days afforded for seeking certiorari with Supreme Court). Pursuant to 28 U.S.C. § 2244(d), the period tolled 277 days later, on June 4, 2001, when the Petitioner filed his second Motion for a New Trial.  See 28 U.S.C. § 2244(d) ("The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.").  This tolling ceased on March 31, 2004, when the SJC denied further appellate review of the denial of the Petitioner's second Motion for New Trial.  See David, 318 F.2d at 345 (concluding that tolling period for collateral review ends upon state's rejection of such review and does not include period afforded for seeking certiorari with Supreme Court).  Thus, on May 14, 2004, the date on which the Petitioner claims to have mailed an initial copy of his Petition, all but 44 days of the one year afforded to him under § 2244 had been consumed.

      Allowing three business days for Attorney Greenberg's letter of November 22, 2004 to reach him, the Petitioner should be found to have been on notice at least as early as November 26, 2004 that no Petition on his behalf had been received by the U.S. District Court.  Cf. Fed. R. Civ. P. (providing additional three days for party to respond to paper served by mail).  If the period of limitations is found to have restarted at that point, then the day that the Court received the Petition would have been the very last day afforded to the Petitioner under § 2244.  Even if he mailed his Petition on January 3, 2005, as suggested by the date of his cover letter to the

Court, all but six days of the one-year limitations period would have been consumed. It follows that even slight variations in the date on which he mailed any initial copy of his Petition and/or the date on which he mailed the Petition that ultimately reached the Court would have an impact here. This is significant because, as the sections that follow demonstrate, there are several reasons to conclude that the Petition was not properly mailed on the dates suggested by the Petitioner.

Applying one of the two approaches described above would not be inconsistent with the purposes behind the prison mailbox rule. That rule, which was initially applied to notices of appeal and later found applicable to habeas corpus petitions, was largely designed to account for the lack of control that inmates have over the actual filing of their papers, and their inability to "monitor delivery processes or take independent, remedial measures to ensure timeliness when the mail goes awry." Morales-Rivera, 184 F.3d at 109-10; see also, e.g., Houston, 487 U.S. at 270-75. In the seminal Houston case, the Supreme Court observed that a pro se prisoner's "control over the processing of his notice necessarily ceases as soon as he hands it over to the only public officials to whom he has access – the prison authorities – and the only information he will likely have is the date he delivered the notice to those prison authorities and the date ultimately stamped on his notice," and "prisoners cannot take the steps other litigants can take to monitor the processing of their notices of appeal and to ensure that the court clerk receives and stamps their notices of appeal before the . . . deadline." 487 U.S. at 270-72; see also Morales-Rivera, 184 F.3d at 109-10 (noting that pro se prisoners "[lose] control over their pleadings upon submission to the warden"). The High Court cited its reasoning in Fallen v. United States, 378 U.S. 139, 144 (1964), that a pro se prisoner's notice of appeal was not untimely despite having been received after the relevant deadline, because the prisoner "'had done all that could

reasonably be expected to get the letter to its destination within the required [period].'" Houston, 487 U.S. at 270 (quoting Fallen, 378 U.S. at 144). Similarly, the Morales-Rivera court made clear that the rule is designed to ensure fairness for the pro se prisoner who acts promptly and diligently, but whose petition is nevertheless untimely filed due to circumstances outside his control. 184 F.3d at 110 (explaining that pro se prisoners "cannot ensure that their motions will be received by the clerk on time no matter how diligently or far in advance they act").

The Petitioner here, however, *was able* to monitor and obtain information about the status of his Petition. Moreover, this information enabled him to regain control over his case by "tak[ing] independent, remedial measures to ensure timeliness" upon learning that "the mail [had gone] awry." Morales-Rivera, 184 F.3d at 110. He nevertheless neglected to do so until nearly two months later. He thus cannot be said to have "'done all that could reasonably be expected to get the letter to its destination'" with promptness, Houston, 487 U.S. at 270 (quoting Fallen, 378 U.S. at 144), and he cannot be compared to the prisoner who acted "diligently" or "far in advance" but merely encountered obstacles beyond his control. Morales-Rivera, 184 F.3d at 110. Instead, the Petitioner has himself to blame for his delay. He should not be able to claim the full benefit of the prison mailbox rule.

II.     **The Petitioner has not sufficiently substantiated his claim that his Petition was timely filed.**

Regardless of whether the Court adopts either of the approaches described above, it should dismiss the Petition on the grounds that the Petitioner has failed to substantiate sufficiently his claim that he was "timely" and "diligent" in filing his Petition. While the Petitioner has offered evidence that a $5.00 check made payable the U.S. District Court was issued on his behalf on May 14, 2004, he has failed to establish or even allege the precise dates on which his Petition was actually mailed, or that proper postage was affixed.

Habeas Corpus Rule 3 requires an inmate to set forth the exact date on which his petition was mailed in order for that inmate to take advantage of the prison mailbox rule. It provides as follows:

> A paper filed by an inmate confined in an institution is timely if deposited in the institution's internal mailing system on or before the last day for filing. If an institution has a system designed for legal mail, the inmate must use that system to receive the benefit of this rule. Timely filing may be shown by a declaration in compliance with 28 U.S.C. § 1746 or by a notarized statement, *either of which must set forth the date of deposit and state that first-class postage has been prepaid.*

Habeas Corpus Rule 3(d) (effective Dec. 1, 2004) (emphasis supplied).[4] Even if the Petitioner was unaware of the limitations period in § 2244 at the time that his Petition was filed, he was certainly made aware of it when the Respondent moved to dismiss his Petition with prejudice on statute of limitations grounds. Nevertheless, the closest that the Petitioner came to pinpointing the date on which his Petition was mailed in opposing the Respondent's Motion to Dismiss were a vague statement that he "filed his writ of habeas corpus *on or about* May 14, 2004" (Pet'r's Mem. Supp. Opp. Mot. Dismiss (emphasis supplied)), and a noncommittal sentence fragment simply stating, "On or about May 14, 2004, following the denial of my Further Appellate Review (FAR) in the Massachusetts Supreme Judicial Court on march 31, 2004 [sic]." (Pet'r's Aff. Supp. Opp. ¶ 2). He did not make any reference to the date on which he mailed the copy of the Petition that eventually reached the Court in January 2005, or to whether he had affixed sufficient postage to either mailing. (Pet'r's Opp. Mot. Dismiss; Pet'r's Mem. Supp. Opp. Mot. Dismiss; Pet'r's Aff. Supp. Opp. Mot. Dismiss.)

---

[4] Given that this provision was adopted on April 26, 2004 and became effective on December 1, 2004, see Habeas Corpus Rule 3 notes, it arguably was not available to provide guidance to the Petitioner in May 2004. However, it was in place when the Petitioner successfully filed his Petition and supporting papers in January 2005, as well as when he filed his March 2005 Opposition to the Respondent's Motion to Dismiss and his July 2005 Supplemental Affidavit.

11

To the extent that the Petitioner believed he had adequately addressed the statute of limitations issue in opposing the Motion to Dismiss, that belief should have been dispelled by Magistrate Judge Sorokin's Order of June 24, 2005.  With the fate of his action hanging in the balance, the Petitioner was quite clearly directed to "file a supplemental Affidavit describing in detail when and how he filed his petition including a description of what he did after MCI Norfolk issued a $5.00 check payable to the U.S. District Court."  (Order of Jun. 24, 2005.)  Nevertheless, his Supplemental Affidavit failed to include the date on which he allegedly mailed an initial copy of his Petition.  (Pet'r's Suppl. Aff.)  It also did not indicate the date on which he mailed the copy that was actually received by the Court.  (Id.)  Instead, it only stated that he "forwarded another request for a [$5.00] check" on January 3, 2005 and that he "mailed another check."  (Id.)  Furthermore, the Supplemental Affidavit did not assert that the Petitioner affixed sufficient postage to his mailings.  (Id.)

The Petitioner's continued failure to set forth the precise dates on which he allegedly mailed his Petition and whether postage was affixed provides an adequate basis alone for the dismissal of his Petition as untimely.  See United States v. Craig, 368 F.3d 738, 740 (7th Cir. 2004) (finding inmate's declaration pursuant to Fed. R. App. P. 4(c), which is substantively identical to Habeas Corpus Rule 3(d), to be insufficient, because it failed to state that he paid first-class postage, noting that the rule "requires the declaration to state only two things; 50% is not enough.  The postage requirement is important . . . ."); United States ex rel. Johnson v. Briley, 2004 WL 1276717, at *2-3 (N.D. Ill. 2004) ("To take advantage of the [prison mailbox rule], a prisoner must assert that he mailed his habeas petition *on a date certain* and that he prepaid first-class postage." (emphasis supplied)); Hardy v. Conway, 299 F. Supp. 2d 159, 161 (E.D.N.Y. 2004) (concluding that petition was time-barred, where it was dated prior to expiration

12

of limitations period, but filed after end of period, and petitioner failed to provide affidavit of service showing that he submitted his petition to prison authorities for filing and copying within limitations period).

### III. The Petitioner's filings suggest that the Petition was not properly mailed on the dates suggested by him.

Several other aspects of the Petitioner's filings suggest that he did not properly mail copies of his Petition on May 14, 2004 and January 3, 2005.

First, his own Supplemental Affidavit suggests that he may have failed to prepare adequately a Petition and check for mailing in May 2004. He states therein as follows:

> Following the decision of the Supreme Judicial Court, with the assistance of an Inmate with knowledge of the procedures, I promptly prepare a Petition for Writ of habeas Corpus pursuant to 28 U.S.C. § 2254 and mailed to through the Prison Mail System, requesting that it be forwarded to Treasurer Department so that a check in the amount of Five dollars will accommodate the same [sic]. . . .
>
> [T]he envelope containing the petition was open, so that the Treasurer Office could place the check therein.

(Pet'r's Suppl. Aff. ¶¶ 2, 7.) He thus implies that he placed a package in the prison mail system that either was directed to the prison's treasurer, or was otherwise improperly addressed and/or incomplete. To the extent that his mailing was insufficiently prepared, he cannot be found to have complied with the prison mailbox rule. See United States v. Craig, 368 F.3d 738, 740-41 (7th Cir. 2004) (concluding that "dropp[ing] an unstamped notice of appeal into the prison mail system" would not constitute compliance with Fed. R. App. 4(c), which is substantively identical to Habeas Corpus Rule 3(d), noting that the rule "is clearly written" and "prisoners must use [the opportunity it creates] in the way the rule specifies").

Second, the Petitioner notably failed to include a precise date on his Petition and the papers accompanying it. Instead, he simply listed "May  , 2004" as the date of each. (Pet. at 7;

13

Application Proceed Without Prepayment Fees at 2; Mot. Appointment Counsel at 1.)  His omission of a specific date was, in fact, inconsistent with his obligations under statute and rule.  Title 28, Section 1746 of the U.S. Code provides for any sworn statement required by law to be substituted with an unsworn declaration under penalty of perjury that includes the date of its execution.  This statute applies to habeas corpus petitions.  As made clear in the advisory committee notes to Habeas Corpus Rule 2(c), which governs the form of petitions, "[t]he statute is 'intended to encompass prisoner litigation'" and the rule thus "takes into account" the statute.  Habeas Corpus Rule 2(c) advisory comm. notes to 1982 am. (quoting Carter v. Clark, 616 F.2d 228 (5th Cir. 1980), and including excerpt from 28 U.S.C. § 1746 setting forth required declaration).  Perhaps more importantly, the omission seems telling here.  The Petitioner's practice generally is to include a date on his papers before they are mailed.  (Pet'r's Letter to Clerk dated Jan. 3, 2005; Pet'r's Letter to Clerk dated Mar. 24, 2005; Pet'r's Opp'n Mot. Dismiss & Accom. Certif. Service; Pet'r's Mem. Supp. Opp'n Mot. Dismiss & Accom. Certif. Service; Pet'r's Aff. Supp. Opp'n Mot. Dismiss; Pet'r's Letter to Clerk dated July 11, 2005; Pet'r's Suppl. Aff. & Accom. Certif. Service.)  Moreover, if he had completed preparing the Petition and accompanying documents by filling in a precise date, it is more likely that he would have retained a copy of the documents that included such dates.  Thus, the fact that no precise dates appear on such documents suggests that he failed to finalize and mail them in May 2004.

   Third, Inmate Transaction Reports supplied by the Petitioner and obtained by the Respondent do not support the notion that his Petition was mailed initially on or around May 14, 2004 and again on January 3, 2005.  Specifically, while such reports do reflect charges for postage, they do not reflect any such charges between May 1, 2004 and August 4, 2004.  (Inmate Transaction Report Beginning May 1, 2004, a true and accurate copy of which is attached hereto

as Exhibit A, at 1-2.) Also, the only postage charge between August 6, 2004 and March 28, 2005 is one for a mailing to the U.S. District Court on January 10, 2005. (Id. at 2-5.) These reports thus suggest that no mailing with postage was made to this Court prior to January 10, 2005.

The Petitioner cannot sufficiently offset these defects by pointing to copies of cover letters to the Court dated May 13, 2004 and January 3, 2005. (Pet'r's Letter to Clerk dated May 13, 2004; Pet'r's Suppl. Aff. ¶ 2 (referencing May 13 cover letter); Mem. & Order of Jan. 25, 2005 (referencing two letters).)[5] The dates on these letters are of dubious accuracy in light of the foregoing analysis of the Inmate Transaction Reports. Moreover, the date on the first letter is additionally questionable because a $5.00 check made payable to the U.S. District Court was apparently not issued on his behalf until May 14, 2004 (Inmate Transaction Report at 1), and this Court's Memorandum and Order of January 25, 2005 states that this letter was "dated May, 2004" (Mem. & Order of Jan. 25, 2005).[6]

The combination of the above factors casts doubt on the notion that the Petitioner timely and properly mailed an initial copy of the Petition. Accordingly, his insufficiently substantiated claims that he was "timely" and "diligent" should not be given weight. Cf. Oliver v. Commissioner of Mass. Dep't of Correction, 30 F.3d 270, 272 (1st Cir. 1994) (finding showing that petitioner mailed notice of appeal before deadline to be inadequate, where inmate offered only unsupported affidavit, but did not produce copy of purported notice and made no reference to notice when moving "to file a 'late appeal'"); Maldonado v. Artuz, 275 F. Supp. 2d 387, 392-

---

[5] The letter states, "Enclosed please find for filing and forward same to the judge petitioners Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, and my filing fee of $5.00. Kindly Docket this petition and assign a docket number and instructions for service [sic]." (Letter from Gilmore to Clerk dated May 13, 2004.)

93 (E.D.N.Y. 2003) (Weinstein, S.J.) (finding petitioner's claim that he mailed petition on date listed thereon, which was within limitations period, not credible, where petition was received nearly three months after that date, it was neither notarized nor witnessed, and petitioner supplied no evidence other than his own contentions to support his claim).

## CONCLUSION

For the foregoing reasons, the Respondent's Motion to Dismiss should be allowed, and the Petition should be dismissed with prejudice in its entirety.

Respectfully submitted,

THOMAS F. REILLY
Attorney General

 /s/ Randall E. Ravitz
Randall E. Ravitz (BBO # 643381)
Assistant Attorney General
Criminal Bureau
One Ashburton Place
Boston, Massachusetts  02108
(617) 727-2200, ext. 2852

Dated:  July 20, 2005

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served on July 20, 2005, by first-class mail, postage prepaid, upon:

Roderick Gilmore
M.C.I. Norfolk
P.O. Box 43
2 Clark Street
Norfolk, MA  02056

pro se

 /s/ Randall E. Ravitz
Randall E. Ravitz

---

[6] As noted supra, the Respondent has not yet obtained a copy of the letter as received by the Court.