UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

RODERICK GILMORE,
    Petitioner,

v.

LUIS SPENCER,
    Respondent.

CIVIL ACTION
NO. 05-10127-PBS

PETITIONER'S REPLY TO RESPONDENT'S
MOTION TO DISMISS

Now comes the petitioner, Roderick Gilmore, respectfully before this Honorable Court and respectfully reply to the respondent's most recent memorandum in support of their motion to dismiss.

The petitioner request that this Honorable Court denies the respondent's motion to dismiss, because he has comply with the time-limit outlined in ADEPA in filing his writ of habeas corpus petition and that the respondent's agents' interfered with the actual transportation of the same.

PROCEEDING OF THE CASE

The petitioner was tried in the Plymouth Superior Court and subsequently convicted on March 9, 1995, of murder in the second degree. The petitioner filed notice of appeal and subsequently on February 22, 2000, his conviction was affirmed through the Massachusetts Appeals Court.

On June 2, 2000, the Supreme Judicial Court denied the petitioner further appellate review. The petitioner filed a second motion for new trial, which he was represented by counsel.

The Superior Court denied that motion on or about October, 2001. Counsel filed a notice of appeal, which was decided by the Massachusetts Appeals Court on or about September, 2003. At that time, counsel filed a motion for further appellate review in the Supreme Judicial Court, that decision was denied on March 31, 2004. in <u>Commonwealth v. Gilmore</u>, 441 Mass. 1105, 806 N.E. 2d 102 (2004).

The petitioner with assistance prepared and filed his federal petition for writ of habeas corpus on or about May 13, 2004, and forwarded the same through the mailroom procedure to the treasurer here at MCI-Norfolk. Petitioner believed that since he received a returned receipt from the Treasurer's Office, his petition for writ of habeas corpus had indeed been mailed to the United States District Court. See Exhibit "A."

After several months of inaction, upon his writ of habeas corpus, the petitioner learned that although a check was mailed to the Court, his petition had not been received by the Court. <u>See Petitioner's Affidavit On Record</u>, Exhibit "B."

All procedural efforts taken by the petitioner is outlined in his Affidavit On Record. The defendants' argument is although his staff is responsible for processing the mail, the 'mailbox rule should not apply to the petitioner. This is false and misleading. See <u>Mayo v. Hall</u>, 122 F.Supp. 86 , (2000).

ARGUMENT

I.  The Petitioner Is Entitled to The Mailbox Rule.

In May, 2004, the petitioner under the belief that his mail would be process accordingly to the defendant's rules and regulations outlined in CMR's provided by the department of corrections, 103 CMR 481.00, Mail Procedures, that outgoing mail would be process without any intervention on the behalf of the defendants. Since the writ of habeas corpus was process with the disbursement slip attached to the envelope addressed to the United States District Court, One Courthouse Way, would be mailed accordingly. It was never received at all. Although, representatives from the Treasurer acknowledge receiving the receipt to mail five (5) dollars to the U.S. Court. And even, provided a receipt of transaction that a check # 57812, although that too was never received by the United States District Clerk neither. Its ironic that the respondent would take the position that the petition was never mail, but acknowledge that a check was sent from his Treasurer's Office, and the Court has not received that either.

Clearly, petitioner took the required and necessary effort on his part to mail the petitioner within a timely manner and the petition was mailed in according to rules of the institution.

The federal court has decided that Pro se prisoners such as petitioner receive the benefit of the 'mailbox rule' in determining the filing date of their § 2254 petitions under the AEDPA. Morales-Rivera v. United States, 184 F. 3d 109 (1st Cir. 1999). The decision of Houston v. Lack, 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed. 2d 245 (1988)(applying mailbox rule to pro se

prisoner's notice of appeal), constitutes the seminal case regarding application of the mailbox rule to pro se prisoner filings.

The petitioner had no reason to believe that his petition for writ of habeas corpus would be mailed to the Court, but it was not and therefore because he relied upon the discretion and trust of the respondent's agent, the petitioner's petition was never received by the Court, until he took other efforts, once it became clear that the petition was not properly received or filed by the clerk of the Court. The First Circuit in Morales-Rivera detailed the reasoning employed by the Supreme Court in Houston and the basis for pinpointing the filing date of a pro se prisoner's notice of appeal, initial filing of a section 2254 petition; and/or initial filing of a section 2255 motion as the date the prisoner deposits the filing in the prison's internal mail-system provided that the prisoner utilizes the prison's system for recording outgoing legal mail if such a system exists. Morales-Rivera v. United States, 184 F. 3d at 110.

As explained in Morales-Rivera, the mailbox rule set forth in Houston fosters parity between pro se prisoners who must rely on prison authorities and the postal service to file their section 2254 petitions. Morales-Rivera v. United States, 184 F. 3d at 110.

Whereas a pro se prisoner has no choice but to rely on prison authorities and the postal service, a non-incarcerated

litigant can monitor the delivery of his filing and voluntarily choose to rely on the postal service for such delivery. Houston v. Lack, 487 U.S. at 271, 108 S. Ct. 2379 (1988)('other litigants may choose to entrust their appeals to the vagaries of the mail... but only the pro se prisoner is forced to do so by his petition"). The mailbox rule in Houston is designed to avoid disputes about filing dates and the difficult question as to whether a delay by the postal service constituted excusable neglect. See Houston v. Lack, 487 U.S. at 275, 108 S. Ct. 2379 (relying on date of receipt raises "difficult to resolve questions as whether delay by the United States Postal Service constituted excusable neglect").

Under Rule 4(c)(1), pro se prisoners' notice of appeal are "Filed" at the moment of delivery to prison authorities for forwarding to the district court. Cf. Fallen v. United States, 378 U.S. 139, 84 S.Ct. 1689, 12 L. Ed 2d 760 (Stewart, J. concurring). Unskilled in law, unaided by counsel and unable to leave the prison, a pro se prisoner's control over the processing of his notice necessarily ceases as soon as he hands it over to the only public officials to whom he has access--the prison authorities--and the only information he will likely have is the date he delivered the notice to those authorities and the date ultimately stamped upon it. In this case, the petitioner delivered to the mail official, at the Community Service Department building, (hereafter "CSD"), where each inmate has to show his I.D. Card, to substantiate that he is the one mailing the letter, package, etc. The petitioner handed the mail officer

his package for delivery to the Treasurer's Department so that a check may accommodate the petition. While the Treasurer's Office acknowledges receipt of the request and made out a check to the U.S. District Court, no such check ever arrived to the Court, and was subsequently voided, with another check being made payable to the Court, somehow that check also written was never received by the Court neither. Petitioner relied upon his immediate family to mail the check which was received by the Court, which questions whether actors under the control of the respondent's deliberately hampers with any and all inmates who are attempting to access the Court. In addition, it raises the questions of whether should professionals from the United States Postal Service should be authorized to receive the inmates' mail in a register deposited box, to eliminate interference, by staff or staffs, who are amuse by such interferences, depriving inmates of their constitutional rights of access to the Courts.

    The respondent attempts to circumvent the real abuse here, and that agents acting in his behalf intervene in his legal avenues before this Court. They argue on page 7 of respondent's motion to dismiss that the petitioner did not take any action to the Court. It's clearly understood that once the Court acts on any motion, the clerk of the Court will forward any and all information upon all parties of interests. Because the petitioner had received a receipt that a check was forwarded to the Court he had no reasons to assume that the agents of the respondent would act inappropriately. His requests to the treasurer of a copy of the check went unanswered. Only through communication to the Pro

Se Clerk was the petitioner to ascertain that his petition was not properly received, at which time, he contacted the mailroom officials, whom claimed that it was forwarded to the treasurer's office. And the treasurer's office indicating that it was mailed with the check, which to date has never been located. When it was recommended to resubmit a copy of the petition, only then did the petitioner act appropriately, as well as requesting a check to the U.S. Clerk's office, which although requested and process it never was received by the Court, again error on the agents of the respondent.

Only through communication to family members, was the petitioner able to assured that someone other than the respondent, would act in his genuine interests. Agents independently or with knowledge of the respondent have deliberately interfered with the petitioner's efforts to properly file his petition for writ of habeas corpus, including the filing fee. When family members assisted the petitioner in obtaining a Postal Check did the Clerk actually receive the filing fee, although the petition had sat at the clerk's office. Petitioner should not be punished for interference, or intervention of others under the control of the respondent. The respondent is the Superintendent of the facility petitioner is held, and is in control of day to day operations of the institution, as well as the staff, under M.G.L. 124, § 1, of the Commissioner Kathleen Dennehy. While the respondent makes numerous excuses for not

accepting the mailbox rule, petitioner is rightly entitled to, he does not hold his staff responsible although through all avenues they possess, and process the petition and check in question not received by the Clerk of Court.

For these reasons, the petitioner should be allowed to proceed, given the merits of the 'mailbox rule.'

II.   Petitioner Has Sufficiently Validated That His Petition for Writ of Habeas Corpus Was Timely Mailed, Therefore It Is Timely Filed.

In Accordance to the respondent's Mail Rules and Regulations 103 CMR 481.00 es seq. all legal mail is deciminated within a timely manner, including mailing. See Exhibit "C", page 2 , which describes the policy in full. Petitioner asserts that he mailed his petition on May 14, 2004, and is ascertained by the certificate of service therein attached with cover letter. While the petitioner has followed both the rules of the institution and mailed the document. Postage was attached in the form of U.S. Postage Stamps, the only procedures for the respondent's agents was to forwarded to the Treasurer's Office and place in the Postal Box for delivery. The respondent has failed to substantiate that they put a check in the self-stamped manila envelope and forwarded to the Court. The Treasurer's Office do acknowledge that a check was mail, but from that point the location and delivery of the mail is suspect.  An Pro se prisoner's control over the processing of his mail, necessarily ceases as soon as he hands it over to the only public official to

whom he has access, namely the prison officials (Respondent's agents), and the only information he will likely have is the date he delivered the documents to those authorities and the date ultimately stamped upon it. The respondent's agent (treasurer) acknowledge receiving the document and submitting a check on May 14, 2004, so clearly this is the date of petitioner's petition of writ of habeas corpus being mailed to the Court.

Petitioner has never claimed to not knowing the limitation, and his petition was promptly filed. It is the inaction of the respondent's agents that comes to question. The numerous checks written but the treasurer's office, but never received by the Court, although a self-stamped package, including the petition for writ of habeas corpus and self-stamped envelope was provided to them. The respondent has been unable to show an actual check was mailed or cashed which raises numerous questions to the intervention of the respondent's agents, acting in his capacity or without his influences.

Since the mailbox rule is applied here, the petitioner should be allowed to proceed with the foregoing action in his petition for writ of habeas corpus and relief therein sought.

III. Petitioner Original Petition Was Mailed on MAy 14, 2004, with the Second Petition Mailed Thereafter Once The Court Determined That the Petition And The Check Was Never Received.

All outgoing mail that must accommodate a check or treasurer report has to remain open so that the Treasurer's Office may

include the requested item. As in this case, the Petition was required to accommodate a check in the amount of five ($5.00) dollars. Under 'good faith' the petitioner had no reason to believe that the Treasurer's Office would do nothing other than that. The failure of the officials to act accordingly should not be the responsibility of the petitioner, but that of the Respondent. Since the respondent has established certain rules and regulations. In Massachusetts, administrative agency regulations have the force of law. Royce v. Comm'r. of Correction, 390 Mass. 425, 427 (1983). Once an agency has seen fit to promulgate regulations, it must comply with those regulations. Id. Consequently, individuals within the agency may not arbitrarily disregard agency regulations to the prejudice of a party's rights. kenny v. Commissioner of Correction, 393 Mass. 28, 33 (1984)(citing Dalomba's Case, 352 Mass. 598, 603 (1967). For these reasons the respondent had a duty to notify his staff not to interfere with any inmate legal mail, regardless, of lawsuit or petitions as in the foregoing matter. As petitioner's petition was properly mailed on May 14, 2004, it is clearly within the time limit and the respondent should not try or attempt to mislead the Court under deception methods as in their arguments outlined. The petitioner is entitled to the mailbox rule and should be allowed to proceed accordingly. See Morales-Rivera v. United States, 184 F. 3d at 110.

Pro se prisoners have no choice but to rely for filing on prison authorities and the postal service. They cannot monitor delivery process or take independent, remedial measures to ensure timeliness when the mail goes awry. Their isolation impairs their ability to prove, where applicable, that delays are due to prison authorities or clerical errors.

The mailbox rule helps ensure equal access to the courts and functionally equivalent time-bars for pro se prisoners. See <u>Alves v. Matesans</u>, 20 F. Supp. 2d 135, 137 (D.Mass. 1998)(finding no practical or principled justification for refusing to apply the prisoner mailbox rule to a petition under 28 U.S.C. § 2254). Other Circuits have considered the issue have applied the prisoner mailbox rule to motion under 28 U.S.C. § 2254 or § 2255. See <u>Peterson v. Demskie</u>, 107 F. 3d 92 (2nd Cir. 1997)(dictum)(§2254 petition).

For these reasons, the petitioner should be allowed to proceed with his petition for writ of habeas corpus and respondent's motion to dismiss be denied accordingly.

WHEREFORE, the petitioner prays that this Honorable Court will rule accordingly.

                                            Respectfully submitted,

Dated: 7/27/05

                                        Roderick Gilmore
                                        P.O. Box 43
                                        Norfolk, MA 02056